The opinion of the court was delivered by
Gibson, C. J.
William Grant was undoubtedly a competent witness. He had divested himself of all interest, and this is all ■ that is necessary to be said in regard to the first point.
As the cause is to be tried again, it will be more useful to point out the principles on which it depends, and which appear to have been misconstrued, than to enter into an analytical examination of -the errors assigned in the opinion1 of the judge on the points made •‘below; and, for this purpose, it is necessary to trace the features of the case as it appeared on the evidence.
In 1814 George Grant entered into a parol agreement with ■ William Cook, to purchase five tracts of land, at the price of sixteen thousand nine hundred and ninety-nine dollars and ninety-nine cents; and shortly afterwards, ■ Grant, attended by his father, Thomas Grant, and Cook, attended by his wife’s father, James Lemons, met together to execute the contract.. Four of the tracts were conveyed, and bonds and a mortgage executed for the purchase money of the whole five. Why the remaining tract was -not conveyed, will appear in the sequel. " The mortgage recites the bonds and the conveyance of the four tracts; but nothing is ■said of the fifth, denominated the M‘Cully tract, as regards which, the contract still rests.on parol: and the action is brought on the mortgage to recover the price of this last-mentioned tract, the price of the others being nearly,--if not. altogether paid.
Possession of the tracts conveyed, was delivered in -season, and of the M‘Cully tract some time afterwards;. Grant accepting a sum of money in compensation of the delay. At the trial, Lemons tendered a deed for the M‘Cully tract, executed by his W’ife and himself, but without warranty; on-which the court charged, that the plaintiff was entitled to -recover. Evidence of other eircum *209 stances, thought to be material, was given (luring the trial, and will be noticed in the course of the inquiry.
What are the principles of the action to recover the price of land? It was formerly thought, that as the vendor wants nothing but the purcháge money, which may be recovered in an action of debt, his remedy is exclusively at law, (Sugd. Vend. 164,) and undoubtedly an action lies.' But, it having been thought proper to execute the contract specifically, it was supposed that justice required the remedies between the parties to be mutual, and in the same courts; consequently, a bill will be entertained to enforce payment of the purchase money. (Newl. Cont. 91.) But, in an action on the contract, even the English courts take cognizance of equitable objections, (Sugd. Vend. 178;) and, in Pennsylvania, where we have no separate court to control the exercise of legal rights, there is still greater reason for doing so. Accordingly, in Huber v. Burk, (11 Serg. & Rawle, 238,) it was held, that an action for purchase money is in effect a bill in equity; the purchaser being at liberty, under the plea of payment, to give evidence of any circumstance that would actuate a chancellor to withhold his assistance. In the case before us, therefore, the action is to be viewed as a bill to execute a contract, already so far executed as not to be within the statute of frauds.
The inquiry then is, whether enough has been shown to induce a chancellor to dismiss the bill. The intrinsic evidence of the transaction, as well as the testimony of- Lemons himself, proves incontestibly that he, and not Cook, was the actual vendor of the M'Cully tract. He was the owner of it, and it was well known that no one else could convey it. He also exercised a superintending power over the agencj' of Cook. He says he knew of the sale, and approved of it; and the reason this tract was not conveyed with the others was, that Cook had contracted to sell it to Colt, and he was afraid Cook might be made liable for a breach of that contract. But he wanted the purchase money to be settled to the separate use of his daughter, Mrs. Co.ok. it was Lemons, therefore^ and not Cook, who prevented the contract from being entirely executed at the date of the mortgage. Last of all, he acted openly in the business, when Cook’s intellects, had become loo weak to prevent him to act even ostensibly for himself. These, no doubt, are considerations for a jury; but at present I assume as a fact, which may be satisfactorily proved, that Lemons was the actual vendor of this particular tract; and, if this be cstablis'hed, it will be immaterial that the price of it was payable to Cook. On the other hand, it is as little to be doubted that Thomas Grant, the father of the defendant, was the actual purchaser. We have then a transaction between two fathers, each treating for his child; and, in equity, these al.so are parties: so that it.remains to inquire how far the acts of Lemons, as a vendor, will affect the plaintiff^ title to a specific performance.
*210 It is admitted that if Lemons and Cook acted throughout by direction, or with the knowledge and assent of . the defendant, the fact would furnish a triumphant answer to every objection to the action but one; and of that I shall speak in the conclusion. But the affirmative of the proposition depends almost exclusively on the testimony of Lemons himself, whose connexion with the cause is so intimate, whose bearing in the transaction is so equivocal, whose story implicates him in a conspiracy to defraud, and who is contradicted in material points by so many witnesses, that his testimony ought to be left to the jury, with a direction to find for the defendant, if he were thought unworthy of credit.
But if Cook concealed the ownership of Lemons, and the delusion were kept up till the mortgage was executed, the plaintiff must fail. The suppression of that fact would be a positive fraud, which, according to Duncan v. M‘Cullough, (4 Serg. & Rawle, 438,) would so infect the contract as to render it incapable of subsequent confirmation without a new consideration; and fraud in the concoction of a bargain is a decisive answer to a bill for specific performance. Where the contrary is not stipulated, a purchaser is entitled to the conveyance and the covenants of the vendor himself. Here the conveyance of the other tracts by Cook,< contains a covenant of general warranty; and, if the parties intended that he should convey this tract also, it would be fair to infer that the deed was to contain the same covenant. The deed tendered by Lemons at the trial contains no covenant at all; but that is comparatively of little importance, as although the personal responsibility of Cook may have been an object of less value than that of Lemons, yet, if the defendant bargained for it, he is not bound to accept of any thing else as an equivalent. So that Lemons’s conveyance with or without warranty, would not be an execution of the contract on the part of. the vendor.
Again. If Lemons declared at different times, and on different' occasions, that he had bought and paid for the M'Cully tract, and. would keep it, that would furnish a substantial ground of objection to the action. A bill for a specific performance is an application to the discretion of the chancellor, who will not interfere where the party who seeks relief, has trifled or shown a backwardness in performing his part of the agreement, especially, if in the meantime a change has taken place in the situation of the parties, or an alteration in the value of the property. There must be no temporizing, but the plaintiff must show that he yvas always “ready, desirous, prompt, and eager.” * If, since the time when the conveyance was to have been made, he has done any act inconsistent with the equitable ownership of the vendee, such as incumbering, he will be concluded; as in Huber v. Burke, (11 Serg. & *211 Rawle, 238.) Laches per se may be an insurmountable obstacle; and the delay of even a few months has been a bar where there was an alteration of the value. (1 Mad. Ch. 417.) If then the jury shall believe that Lemons withheld the title because Cook was a spendthrift, and would not be prevailed on to settle the purchase money to the separate use of his wife, or even if without this or any other particular motive, he declared a determination not to execute the contract, he comes too late, after Cook's death has removed the cause of his repugnance, to put Cook's wife in a situation to call for the purchase money, and compel the defendant to take the property after it has greatly depreciated.
On the other hand, there is a circumstance which is a waiver of all delay previous to the time when it occurred. I allude to the compensation awarded to the defendant in 1817, for having been kept out of possession of this tract after the possession of the others had been delivered. The acceptance of this compensation was a recognition of the contract as existing for the purpose of specific execution, but subsequent trifling or backwardness might still be set up as a defence. What passed at the settlement before Mr. Priestly and John Cook, has not been disclosed, and we are unable to judge of its effect on the contract.
But there is a circumstance yet to be noticed, the effect of which I take to be decisive against the plaintiff, be the knowledge and acquiescence of the defendant what they may. An action to recover dower in this tract was brought against Grant, by the mother of Cook; and, being submitted to arbitrators, came to a hearing in July, 1822. Lemons, who appeared before the arbitrators, asa witness for Grant, distinctly swears, that he and Grant entered into a plot to defeat Mrs. Cook, by denying the right of her son, who was then dead, to sell; Lemons declaring his own intention never to convey. Other witnesses testify, that having appeared as a witness to disprove the estate of Grant, he produced his deed, and declared under the sauction of an oath, that he had bought the land, and was determined to keep it. Here, again, we find him acting a part in the business, for, his own benefit; for Grant would undoubtedly have been entitled to an allowance out of the purchase money, for whatever should have been recovered in the action of dower. But the circumstance, most material to the inquiry, is, that we find him declaring on oath, (hat he considered the contract at an end. The consequence is, that Grant and Lemons, having conspired to cheat an innocent person, by repudiating the contract, shall never after set it up against each other. The principle that a sham agreement, or fraudulent representation, though absolutely void as to third persons, is nevertheless binding on the parties, is as old as the law itself. A fine illustration of it, is found in Montefiori v. Montefiori, (2 Bl. Rep. 363;) a case which bears a striking resemblance to the one before us. In an action on a promissory note, the de *212 fendant was not permitted to show that it had been given to serve the plaintiff’s purposes, in a treaty of marriage, by giving him a false credit as a man of fortune, the balance of accounts for which the note purported to be drawn, having no existence in fact; and this because, wherever third persons collusively represent any thing in a light different from the truth, they shall be held to make it good between themselves; or, to use the emphatic language of Lord Mansfield, “ it shall be, as represented to be.” The same thing in effect, was done in Small v. Brackley, (2 Vern. 602.) And in Bell v. Longbridge, tried before Chief Justice Tilghman, at a Circuit Court for Cumberland county, held in June 1807, at Carlisle, a judgment creditor who had delivered to his debtor a written acknowledgment of satisfaction, while the land of the latter was in execution, .and before a jury of inquiry for condemnation, was not permitted to allege that his judgment was unsatisfied. The cause was argued by able counsel, who thought proper to acquiesce in the decision. If, then, Lemons disaffirmed the contract, to enable Grant the more successfully to make a dishonest defence in the action of dower, he is ipso facto estopped from affirming the contrary. It seems to me this point removes all difficulty, by superseding every other inquiry; for if the jury shall believe that Lemons was the real party, and that he acted the part which is proved upon him by his own confession, and the testimony of witnesses, it would reflect but little credit on the administration of justice, to permit him to recover.
Duncan, J., delivered an opinion contra.
Rogers, J., and Huston, J., concurred with the Chief Justice.,
Tod, J., not having heard the argument, took no part.
Judgment reversed, and a venire facias de novo awarded.