## Stewart *against* Kearney.

He who parts with the possession of his property for the purpose of defrauding his creditors, cannot maintain trover to recover it back. But after his death, if his estate be otherways insufficient to pay his debts, the action of trover survives to his personal representative, who may prosecute it for the benefit of creditors.

ERROR to *Fayette* county.

Jacob Kearney's administrator against Alexander Stewart and John Shough.

This was an action of trover, brought by Jacob Kearney against the plaintiffs in error, for a wagon and team. The cause was arbitrated, and an award found for the plaintiff, for 416 dollars. From this award Alexander Stewart appealed. Jacob Kearney died, and R. P. Flenniken, his administrator, was substituted. The defendant pleaded not guilty. It appeared that Kearney had delivered the team to Shough, who gave his notes for the price; but it was alleged, and proof offered to establish the allegation, that this was a mere cover, and that Shough engaged to drive the team into Maryland, and there redeliver it to Kearney. Shough sold the team, excepting one horse, to Stewart, who gave his notes, which he afterwards paid. But it was alleged, that Stewart knew that the contract between Kearney and Shough, was a sham, and was privy to the whole transaction. On the trial of the issue, the counsel for the defendants requested the court to charge the jury, among other things:

"That if the team was delivered to Shough, in furtherance of an illegal contract, to defraud his (Kearney's) creditors, this action does not lie."

"That if the sale and transfer of the team in dispute, were made by Kearney to Shough, in order to defraud his creditors, and slip the property into another state, out of their reach, he cannot now take advantage of his own fraud, but is bound by it, inasmuch as it was sold by Shough to Stewart, a third person, who has paid his money for it."

Court charged the jury as follows:

It is the opinion of the court, that the cause of action does sur-

[Stewart v. Kearney.]

vive, and may be maintained by the administrator, in its present form.

If Kearney made a fair sale of the team to Shough, the plaintiff cannot recover.

It is a general principle of law, that a party who has entered into a fraudulent contract or arragement, to defeat his creditors, cannot have the aid of legal proceedings to enforce it. If, therefore, he made a sale and transfer (or delivery) of the team to Shough, although the design was to "defraud his creditors and to slip the property into another state, out of reach," he cannot now take advantage of this, his own fraudulent intention, but must be bound by it if the property has been sold by Shough to Stewart, and he has paid his money therefor, without notice of the secret and unfair purpose.

If there was a sale and delivery of the team, by Kearney to Shough, the plaintiff cannot recover in this action," unless Stewart was a party acting with Shough in a fraudulent, mutual design, at the time to defraud Kearney, or had notice of such design."

If there was a delivery of the property into the hands of the defendants, by Kearney, in order to sustain this action, there must be a demand and refusal, on their part, to redeliver the team, before a conversion can be established: unless

The delivery was a bailment for a special object, (as, for instance, to drive the team into Maryland, and then restore it to the owner,) and the defendants, instead of doing so, actually made use of the property for their own benefit, by selling it, or carrying it off and disposing of it so as to deprive the owner of the property.

Errrors assigned.

1. The court erred, in neglecting to charge the jury on the second point submitted by the defendant's counsel.

2. The court erred, in saying that the plaintiff would be bound by his fraudulent sale, only, "if the property has been sold by Shough to Stewart, and he has paid his money therefor," and then, only in case Stewart acted, "without notice of the secret and unfair purpose."

*Ewing*, for plaintiff in error, cited 5 *Binn.* 113; *Ibid.* 109; *Yelv.* 196–7; *Murphy* 321; 7 *Johns. Rep.* 161; *Cowp.* 343.

*Austin*, for defendants in error.

The opinion of the Court was delivered by

GIBSON, C. J.—That a collusive contract binds the parties to it, is a principle which commends itself no less to the moralist than to the jurist; for no dictate of duty calls on a judge to extricate a a rogue from his own toils. On any other principle a knave might gain, but could not lose, by a dishonest expedient; and we should

[Stewart v. Kearney.]

but administer provocatives to unfair dealing, did we repair the cross accidents of an unsuccessful trick. It is, therefore, in accordance with a wise and liberal policy which requires the consequences of a fraudulent experiment to be made as disastrous as possible, that a fraudulent bargainee is assisted—assisted for no merit of his own, but for the demerit of his confederate. For a principle so plainly established, as that which has grown out of this policy, I recur to no authority. . It is a rudimental one, which meets the eye at every turn of professional research; and we have applied it, though the representation were not in the shape of a warranty, wherever there was collusion to be discouraged. In Cook *v.* Grant, 16 *Serg. & Rawle* 198, the pretended recision of a sale was held to preclude a party to it from setting it up against his fellow; and in Bell *v.* Loughridge, (there misprinted Longbridge,) the late chief justice prevented a creditor from insisting on the lien of his judgment, because he had given the debtor a feigned acquittance to save his land from condemnation by an inquest. In what respect is the principle of those cases, inapplicable to this? The effect of a sham sale on the title, was put as a point for direction; and the judge, premising that a party cannot have the aid of the court to enforce a sale intended to have been a fraud on creditors, directed that it would bind the right *if* the property were transferred to a second vendee ignorant of the fraudulent purpose; thus directly affirming that the law will not execute a collusive contract betwixt the parties to it, and leaving the jury to infer that, in the absence of intervening rights fairly acquired, it will unravel an executed contract to set the parties back to the point from which they started. Far otherwise. It not only sustains the contract when executed, but enforces it when executory; and the rule, as well as the exception, was mis-stated. In Montefiori *v.* Montefiori, 1 *W. Bl.* 364, the action was on a promissory note, drawn without consideration to give the payee a false credit in a marriage treaty; and Lord Mansfield shortly disposed of the defence, saying that betwixt confederates, " it SHALL be as represented to be; for no man shall set up his inequity, as a defence, any more than as a cause of action." Then, whether the second vendee be a *bona fide* purchaser or not, he may insist on the sale against the original vendor, because his predecessor could have insisted on it. For the benefit of the fraudulent vendor, or those who stand in his place, by testament or descent, no action lies; but against the interests attempted to be defrauded, the sale is a nullity, and this action is maintainable in the name of the administrator, as a trustee for the creditors, according to Buehler *v.* Glonninger, 2 *Watts* 226, only so far as the property in contest may be needed for payment of debts, whose existence the plaintiff will be bound to show. For aught that appears in our paper books, the state of the assets was not a subject of inquiry; but as the cause is ordered to another

jury, it may become a very material one; for if the estate shall turn out to be solvent, the action will not be maintainable at all.

Judgment reversed, and a *venire facias de novo* awarded.