## BIGELOW *against* LAWRENCE.

*A* being insolvent, and contemplating an assignment of all his property, it was
agreed between him and *B,* that *B* should give his promissory note to *A* for
800 dollars, payable in four months, and *A* should give his note to *B* for the
same sum, payable on demand ; the latter note to be secured by two mort-
gages, one of real, the other of personal estate. *B's* note, and *A's* note and
mortgages, were to be given, one in consideration of the other. This arrange-
ment was made, and carried into effect, upon the advice of counsel that it
would be legal, with the intention and for the purpose of furnishing *A* with
means for the support of himself and family until he could re-establish him-
self in business, and to enable him to make some provision for a certain class
of his creditors, not otherwise provided for. Upon a bill to foreclose the prop-
erty so mortgaged, by other creditors of *A,* who had a lien upon it, the supe-
rior court decided, that the note and mortgages so given by *A,* were, as
against his creditors, fraudulent and void ; in consequence of which, *B* was
deprived of his security. *C,* a creditor of *A,* then sought, by a process of
foreign attachment, to recover from *B,* the amount of his note to *A.* On the
*scire-facias,* it was held, 1. that the decree of the superior court on the bill of
foreclosure, was admissible, to show the fact that the creditors of *A* had

avoided his note to *B.* ; 2. that *C*, coming in under *A* and claiming his rights, could not recover against *B*, if *A* could not, and that *A* could not, because *B* was entitled to a set-off of *A's* note ; 3. that the consideration of *B's* note had failed, and on that ground, he had a sufficient defence to *C's* claim.

*Qu.* Whether a note given by *A* to *B* to carry into effect an arrangement to defeat the creditors of *A*, and which is, therefore, fraudulent and void as against such creditors, be valid as between the parties ?

THIS was a *scire-facias*, in a process of foreign attachment, in favour of *Lemuel A. Bigelow*, against *E. Grove Lawrence*, as the trustee and debtor of *Nathaniel Stevens*.

The cause was tried at *Litchfield, August* term, 1843, before *Storrs,* J.

The plaintiff commenced the process, by an action of debt on judgment, in his favour, against *Stevens ;* a copy of the writ, dated *August* 14th, 1839, being duly left with the present defendant. By the consideration of the county court, to which the writ was returnable and returned, the plaintiff, in *October*, 1840, recovered judgment against *Stevens*, for 273 dollars, 12 cents, debt, and 17 dollars, 96 cents, costs of suit. An execution on this judgment was put into the hands of an officer, who made diligent search for goods and lands of *Stevens*, (his body being protected, in consequence of a general assignment under the statute of 1828,) but could find none ; and he then made demand of *Lawrence*, of the goods and effects of *Stevens*, in his hands, and of any debt due from *Lawrence* to *Stevens*, but *Lawrence* neglected and refused to deliver any such goods or effects, or to pay any such debt.

The facts on which the question of *Lawrence's* indebtedness to *Stevens* arises, are the following. On the 6th of *February*, 1838, *Stevens* being largely indebted to various creditors, and being deeply insolvent, and contemplating an assignment of all his property, real and personal, (except the debts due to him,) for the exclusive benefit of a portion of his creditors, termed his *home creditors*, all of which was known to *Lawrence*, proposed to *Lawrence*, and agreed with him, that he should make and deliver to *Stevens* his promissory note, payable to *Stevens*, or his order, four months from its date, for the sum of 800 dollars, for the purpose of furnishing means to *Stevens* to support his family until he could establish himself in business, and also to enable him to make some provision for the other portion of his creditors, termed his *foreign credit-*

ors, and for the creditors of the late firm of *Andrews & Stevens,* of which said *Stevens* was a member; and that *Stevens* should, at the same time, make and deliver his promissory note to *Lawrence,* payable to him, or his order, on demand, for the sum of 800 dollars, and secure such note, by two several mortgages, one of *Stevens'* real, and the other of his personal estate, (exclusive of the debts due to him,) to be executed by him to his home creditors and *Lawrence,* jointly. In pursuance of this agreement, *Stevens* and *Lawrence,* on said 6th day of *February,* 1838, each made and delivered his promissory note, of that date, to the other, for the sum of 800 dollars, payable as aforesaid. As security for the note from *Stevens* to *Lawrence,* as well as for the claims of the home creditors of *Stevens,* he, on the same day, executed and delivered to *Lawrence* and said home creditors, two mortgage deeds, one of real estate, and the other of certain personal property. The consideration of the note given by *Lawrence* to *Stevens,* was *Stevens'* note to *Lawrence* and said mortgages; and the consideration of the note and mortgages executed by *Stevens,* was *Lawrence's* note to *Stevens.* This arrangement between *Stevens* and *Lawrence,* was made and carried into effect, as well on the part of *Lawrence* as of *Stevens,* with the intention and for the purpose above specified. There was never any agreement or understanding between *Stevens* and *Lawrence,* that the note so given by *Lawrence* to *Stevens,* should not be fully paid.

In the month of *September* or *October,* 1838, *Lawrence* paid on his note to *Stevens,* the sum of 200 dollars; which is all that has ever been paid thereon. *Stevens* has never paid over any part of this sum to any of his creditors, or to any of the creditors of *Andrews & Stevens;* nor has he ever applied the note, or any part thereof, towards paying, or securing payment of, any of the debts or claims of said creditors; but it now remains in the possession of *Stevens.* Neither has *Lawrence,* on the other hand, ever received payment, in whole or in part, of *Stevens'* note to him.

On the 7th of *February,* 1838, *Stevens* executed and delivered a mortgage deed of the real estate so by him mortgaged on the day preceding, to *Elijah S. Deming* and certain other persons, his creditors, for the purpose of securing the debts and claims in their favour against him.

On the 18th of *July*, 1840, *Augustus Pettibone*, one of the mortgagees named in said mortgage deed of the 6th of *February*, 1838, for the purpose of availing himself of the security furnished thereby, brought his bill in equity for a foreclosure, to the superior court of the county of *Litchfield*, in *August*, 1840, which was proceeded with to a final decree thereon. At the same term, *Elijah S. Deming* and others filed a cross-bill, which was also proceeded with in said court. The cause, on such bill and cross-bill, was regularly continued to the term of the court in *February*, 1843, when a final decree was passed therein, in favour of the plaintiff. The following is a part of that decree: "On the facts found by said committee, regarding the note of 800 dollars, mentioned in the condition of said mortgage deed of *February* 6th, 1838, as due from said *Stevens* to said *Lawrence*, the court is of opinion, that as against the *bona fide* creditors of said *Stevens*, said note is not valid; and that said mortgage deed of *February* 6th, 1838, so far as the same purports to convey an interest in said mortgaged premises to said *Lawrence*, is void, as against the *bona fide* creditors of said *Stevens*." (*a*)

In this case, the court found, that if the record of that cause was admissible evidence, the facts therein found, and not herein stated, are true; otherwise, not true.

There has never been any redemption of said mortgaged premises, by *Stevens* or *Lawrence*, or the creditors of *Stevens*, or any other person, though the time limited in the decree for that purpose, has elapsed; and said mortgaged premises are not sufficient in value to pay in full all of the first and second class of mortgages, whose debts were found due, and allowed by the superior court, in said decree. *Lawrence* has no property or means, received by him from *Stevens*, to pay any debt or claim that *Stevens* owes him, embraced in said note given by *Stevens* to *Lawrence*, or otherwise, either in whole or in part.

In this case, the court further found, subject to the ques-

(*a*) The cause here referred to, is that which came before the supreme court of errors in *Litchfield* county, in 1842, for advice, during its pendency in the superior court. See *Pettibone* v. *Stevens* & al. 15 *Conn. R.* 19–27. As the proceedings in the cause, and particularly, the finding of the committee, are there detailed, the statement in the text will probably be deemed a sufficient description of the record, for the present purpose.—*R*.

tion whether evidence to prove the facts was admissible, that before the exchange of said notes between *Lawrence* and *Stevens*, *Lawrence* was advised and informed, by —— —— Esq., an attorney and counsellor at law, who was consulted on the subject, that the transaction of exchanging said notes and securing *Lawrence*, by said mortgage, would be legal and valid; and that, when said notes were so exchanged, and said security so given, *Lawrence* acted on such advice, and believed that said transaction was legal, and would be sustained.

*Litchfield,*
*June, 1844.*

*Bigelow*
*v.*
*Lawrence.*

The court further found, that if, on the facts aforesaid, *Lawrence* is to be deemed, and adjudged to be, indebted to *Stevens*, at the time when the copy was left in service with him, he was then, and also at the time when demand was made on him on the execution, indebted to *Stevens*, in a larger amount than the judgment and execution in favour of the present plaintiff against *Stevens*, together with the officer's fees and interest.

The question as to what judgment ought to be rendered in the case, was reserved for the consideration and advice of this court.

*T. Smith* and *Seymour*, for the plaintiff, contended, 1. That the note of *Stevens* to *Lawrence*, and the note of *Lawrence* to *Stevens*, are good, as between the parties, by force of the statute against fraudulent conveyances. This appears, first, from the *language* of the statute. The words, "as against those persons *only*," are not mere words of exception, but of positive enactment, being equivalent to a provision, that the conveyance, as against all other persons, shall be valid. Secondly, this construction is obviously required, by the *policy* of the act. The object of the legislature was, not merely to prevent the wrong meditated against creditors, but to *give effect* to the conveyance as between the parties, so as to involve them in all the difficulties of a valid conveyance, and thus discourage such transactions. *Hawes* v. *Leader*, *Cro. Jac.* 271. *Fairbanks* v. *Blackington*, 9 *Pick.* 93. *Dyer* v. *Homer*, 22 *Pick.* 253. *Findley* v. *Cooper*, 1 *Blackf. R.* 263. Thirdly, the present defendant cannot claim that his note is void, because his object in giving it was, to give a

credit to *Stevens.* To pronounce the note void now, would be to make the law aid in consummating the fraud.

2. That there is no want or failure of consideration. The notes were mutually considerations of each other. At any rate, the mortgage of the land by *Stevens,* and the assignment of his personal property, constituted a sufficient consideration to uphold the note from *Lawrence* to *Stevens. Prince* v. *Shepard,* 9 *Pick.* 176. *Burnett* v. *Pratt,* 22 *Pick.* 556.

3. That the notes did not mutually extinguish each other. It was not the intention of the parties, that they should do so. Nor is there any *set-off* between *Stevens* and *Lawrence,* as that would render the arrangement nugatory. *Stedman* v. *Jillson,* 10 *Conn. R.* 55. *Cary* v. *Bancroft,* 14 *Pick.* 315. *Robinson* v. *Lyman,* 10 *Conn. R.* 30. *Burrough* v. *Moss,* 10 *B. & Cres.* 558. (21 *E. C. L.* 128.) It is certain that *Stevens* could have disposed of this note, either before or after it became due. He could have raised money on it, for the purposes contemplated when it was given. He could have turned it out to his foreign creditors ; or they could have collected the amount, by process of foreign attachment. *Charles* v. *Marsden,* 1 *Taun.* 224. *Eaton* v. *Cary,* 10 *Pick.* 211. *Robinson* v. *Lyman,* 10 *Conn. R.* 30. *Stedman* v. *Jillson,* 10 *Conn. R.* 55. *Lyon* v. *Summers,* 7 *Conn. R.* 399. *Barrough* v. *White,* 4 *B. & Cres.* 325. (10 *E. C. L.* 345.) *Heywood* v. *Watson,* 4 *Bing.* 496. (15 *E. C. L.* 55.) *Bayl. Bills,* 571.

4. That the note of *Lawrence* to *Stevens* having been put into his hands, when he was in embarrassed circumstances, on purpose to give him a credit, and enable him to raise funds, it is not to be endured, that the maker, when the creditors attempt to enforce payment, should set up the counter note, or the iniquity of the transaction, as a defence. *Lyon* v. *Summers,* 7 *Conn. R.* 399. *Eaton* v. *Cary,* 10 *Pick.* 211. *Montefiori* v. *Montefiori,* 1 *Bla. R.* 336. *Judd* v. *Judd,* 5 *Day,* 534. *Woodbridge* v. *Perkins,* 3 *Day,* 364.

5. That the decree in the case of *Pettibone* v. *Deming* & al. (called *Pettibone* v. *Stevens* & al. in the reported case,) was not admissible : First, because the rights of the plaintiff in this case had accrued, and the liability of the defendant had been fixed, long before that decree was passed. Second-

ly, it was not between the same parties, and was for a different purpose.

*Ellsworth* and *Church,* for the defendant, remarked, 1. That the sole object of the process of foreign attachment, is, to authorize the creditor to collect his debt from his debtor's debtor. So far as is necessary to carry this object into effect, it lends a helping hand ; but it interferes no farther. The attaching creditor is not an assignee of the debt in question ; but is simply clothed with authority to collect it. By his attachment, he secures a priority for this purpose ; and that is all. This opens the inquiry as to what that debt is, and as to the relation subsisting between the parties to it. Is the debt nominal or real ? Is there a counter debt, to be set off against it ? If secured by note, was the consideration legal or illegal? Is that consideration subsisting, or has it failed ? Was the note given by mistake, under duress, &c ? 1 *Sw. Dig.* 584, 5. *Enos* v. *Tuttle,* 3 *Conn. R.* 247. 250. *Boston Type and Stereotype Foundery Company* v. *Mortimer,* 7 *Pick.* 166. *Smith* v. *Stearns,* 19 *Pick.* 20. 22. *Hathaway* v. *Russell,* 16 *Mass. R.* 473. 479. *Barber* v. *Hartford Bank,* 9 *Conn. R.* 407. They then contended,

2. That at the time of the attachment in this case, *Lawrence* was not the debtor of *Stevens.* In the first place, considering the two notes as binding, yet as *Stevens* is a bankrupt, the indebtedness against him is unavailable, and is liable to a set-off. Secondly, there is a failure of consideration ; the note of *Stevens* having been avoided and defeated, by creditors. *Dyer* v. *Homer,* 22 *Pick.* 253. 261. Thirdly, the note in question is an *executory illegal contract;* and, as such, the court will not enforce it. It is void at the common law, because it is part of a device to defraud creditors ; and our statute is only in affirmance of the common law. *Fox* v. *Hills,* 1 *Conn. R.* 295. If a man give a note to induce another to do an illegal act,—illegal by statute or at common law,—and this appear by the plaintiff's proof, will the court enforce it ? And is there any rule that precludes the defendant from showing it ? But here there is no objection to the proof : the fact is proved and conceded. Fourthly, the note was made under a mistake in law, coming from the agent of the promiser. *Chesnut-Hill Reservoir Company* v. *Chase,*

14 *Conn. R.* 132. Fifthly, the present plaintiff is one of the very men, who repudiated the contract between *Lawrence* and *Stevens*, and took away the real and personal estate from *Lawrence.*

3. That the main facts, on which the defence rests, are found, in this case, independently of any aid from the record, in the case of *Pettibone* v. *Deming* & al. or any question about its admissibility. The discussion of that question is, therefore, unnecessary.

WILLIAMS, Ch. J. *Stevens* being insolvent, and about to assign his property, and being desirous to secure something for some of his foreign creditors, and something for the support of his family, upon the advice of counsel that it would be legal and safe so to do, procured this defendant to give him his note for 800 dollars, and he, in return, to give his note to the defendant, for a like sum, secured by a pledge of goods and a mortgage of real estate. Upon a bill to foreclose the property so mortgaged, by other creditors of *Stevens*, who had a lien upon it, this court held, that the note and mortgage so given by *Stevens* to the plaintiff, was, as against creditors, fraudulent and void in law; so that the defendant is, in effect, deprived of the security which alone rendered his note of any value. And now, the plaintiff, a creditor of *Stevens*, claims, under our foreign attachment law, that the defendant is indebted to *Stevens*, notwithstanding.

One question reserved, which has not been pressed in argument, was, whether that decree might be given in evidence; and it is said, *Bigelow* was a party to it, and therefore, it was evidence against him. Whether he was party or not, he here claims no right but under *Stevens;* and it was there judicially settled, in a suit between *Stevens* and his creditors, that this note of the defendant to *Stevens*, was void as against his creditors; thus showing, as matter of fact, that the creditors had avoided the note. We see not, therefore, why this decree of the court is not admissible every where, and against every person, to show that fact. What influence that fact is to have, is a different question.

The claim of the plaintiff is met, by the defendant, upon several distinct grounds : 1. that if this transaction be fraudulent, then the note given to aid in carrying it into effect,

must be void; 2. that if it is not, his note is equally good against *Stevens*, and may be set off against it; 3. that the consideration has failed, and so the plaintiff cannot recover.

1. The first question has, at least in this country, been the subject of various conflicting opinions. In the state of *New-York, Cowen* and *Bronson,* Justices, in the supreme court, contrary to the opinion of Ch. J. *Nelson,* held such note to be void. Chancellor *Walworth* concurred in that opinion. The supreme court of errors, by a bare majority, affirmed the opinion of the supreme court. They cite, in support of their opinion, the case of *Smith* v. *Hubbs,* 1 *Fairf.* 68. in *Maine;* and the case of *Norris* v. *Norris,* 9 *Dana,* 317. in *Kentucky.*

On the other hand, the courts of *Massachusetts,* and of *Indiana,* and of *Pennsylvania,* it is claimed, have held such notes void only as against creditors, but good as between the parties. *Fairbanks* v. *Blackington,* 9 *Pick.* 93. *Dyer* v. *Homer,* 22 *Pick.* 253. *Findley* v. *Cooley,* 1 *Blackf.* 262. *Stewart* v. *Kearney,* 6 *Watts,* 453. And in the case of *Gaylord* v. *Couch,* in our own court, we find *Smith,* J. to take the ground, that the court in *New-York* took; and on the other hand, *Baldwin,* J. to take the ground that the courts in *Massachusetts* have assumed, that such note is void only as it respects creditors. It is somewhat remarkable, if such notes are not collectable as between the parties, that the case of *Harris* v. *Leader, Cro. Jac.* 271. decided shortly after the statute of *Elizabeth,* should have been so little noticed, by *English* judges or elementary writers.

In this conflict of opinions, and when perhaps we ourselves might not entirely agree in opinion, we think it better to waive the consideration of the question, in a case where it is not important to the result to which we have come.

We are satisfied, that the other grounds of defence are sufficient.

2. The plaintiff comes in, claiming, that *Lawrence* owed *Stevens:* he comes in under *Stevens,* and claiming his rights. Now, if *Stevens* himself was plaintiff, ought he to recover in his suit? In that case, our statute would allow the defendant to set off a debt, which he had against the plaintiff, the plaintiff being insolvent.

But it is said, that this would defeat the very object the par-

*Litchfield,*
June, 1844.
——————
Bigelow
*v.*
Lawrence.

ties had in view, in making these notes: it was intended, that each should be paid.  Now, had things remained as they originally were, this might have been a good answer; but after the whole object of the arrangement has been defeated, by the creditors of *Stevens*, it seems to us, that it would hardly do for *Stevens* to say, that the defendant was defeating the arrangement, by his plea.   We are now proceeding upon the ground, that the note of *Stevens* is good as between the parties ; of course, *Lawrence's* note must be equally good, and they must stand entirely unconnected with the claims of the creditors of *Stevens*, so far as regards the set-off.

But the case of *Burrough* v. *Moss*, 10 *B. & Cres.* 558. (21 *E. C. L.* 128.) and the case of *Robinson* v. *Lyman*, 10 *Conn. R.* 30. and some others, are adduced to show there can be no set-off.   It seems to us, that these cases, so far from supporting that idea, prove the contrary position.   If we are to assume, what is here assumed by the plaintiff, that he is in the same condition as the assignee of a note, then we do not think his case falls within the principle of these cases.   In *Burrough* v. *Moss*, the court say, the indorsee of an over-due bill or note, is liable to such equity only as attaches on the bill or note itself, and not to claims arising out of collateral matters; and in *Robinson* v. *Lyman, Church,* J., in giving the opinion of the court, says, " there was no infirmity, nor illegality, nor legal nor equitable defence, existing against the note in question, while it remained in the hands of *Moore*, the payee, growing out of the existence of the note due to *Patten & Russell ;*" and the judge adds, "indeed, there was no connexion, either in fact or by agreement of the parties, between the note in dispute and the debt due to *Patten & Russell.*" " But without some infirmity in the note itself, or some matter which would have constituted either an entire or partial defence to it, or without some equity arising out of the note transaction, or attaching to the note, the indorsee must hold it free from any claim of set-off."   10 *Conn. R.* 34, 5.   Now, in this case, it seems, that if there be an equity, it is not one arising from a collateral matter, but one which is attached to the note itself.   These notes were given, one in consideration of the other ; but the note of *Stevens*, it was known, was worthless, except as secured by the mortgage.   And that it was so understood by them, is apparent from the fact, that

counsel were consulted upon that point ; and under that advice, the notes were given.   When then, it appears, that these parties acted under this mistake, it is apparent, that the equity, whatever it may be, is attached to the note itself, and grows out of the original arrangement mistakenly entered into between the parties.   The question is, whether the defendant holds any balance upon a liquidation of all demands ; *i. e.* after *Stevens'* note has been applied on the note given by the defendant.

3. The court are also of opinion, that there has been such a failure of consideration for the note of *Lawrence,* as affords him a sufficient defence.

The contract between these parties, was not the ordinary case of a sale, by which the purchaser promised some advantage to himself, by speculating upon a doubtful title ; but it was a contract, made at the request, and for the benefit, of another, without any possible advantage to himself ; by which he agreed to exchange his note for that of one, who, he knew, was wholly insolvent, he being entirely secured therefor ; and, the better to do this, legal advice is taken.   It is apparent, therefore, that it was not intended or expected, that *Lawrence* should run any risk ; and we think, there was an implied warranty, that he should be safe.   It is not necessary, therefore, to go into the question, whether, upon eviction, an action of covenant will lie, if that eviction is not by title paramount. Here *Lawrence* has lost every thing of value, for which he consented to give this note.   He has, indeed, got a paper, with the name of an insolvent upon it ; he has a deed, which purports to secure him ; but both are rendered as utterly valueless to him, as if they were mere blanks.   He certainly has got but the shadow of what he contracted for.

We cannot say, therefore, as was said, by Ch. J. *Nelson,* in *Nellis* v. *Clark,* 20 *Wend.* 24. 40. there is no contract, express or implied, against this defect.   That was a case, in which the vendor sold, (and the vendee bought, with full knowledge of the fact,) to defeat a suit then pending against him ; and the judge adds, the land never could have been lost to the defendant, without proof of his knowledge, and that the defendant took the title with full knowledge of the defect ; and there is, therefore, no rule applicable to the construction of contracts, which would make the vendor responsible, under

*Litchfield,*
*June, 1844.*

Bigelow
*v.*
Lawrence.

such circumstances. The case, says the judge, falls within the familiar principle, that imposes upon the purchaser the responsibility of any defect in the article of property, whether real or personal, when he takes it with such knowledge, and without guarding against it, by his contract; and he presumes the defendant provided for this risk of the claims of creditors, by an abatement of the full value of the land; or if he did not, it was his own folly. 20 *Wend.* 40. 41. And Chancellor *Walworth*, in his opinion in the court of errors, in the same case, says, when the vendee gave this note, he assumed the risk of losing his land, if the fraud was discovered; and much reliance is placed, by the senators who gave an opinion, upon the fact that the loss was occasioned, by the fraud of the defendant himself; and they said, the court would not stoop to adjust the equities of the parties to a fraudulent transaction. 4 *Hill,* 424.

In the case before us, we are proceeding upon the assumed principle, that as between these parties, there is no fraud; and they, therefore, must stand upon the same ground, as if there were no creditors concerned. How would the case stand, if *Stevens* had avoided this deed himself? Is he, (aside from any fraud,) in any better condition as it regards this note, whether he gets the benefit of the avoidance, by his own act, or the act of another? In either case, he receives back all of value that he paid; and in both cases, therefore, it must be most inequitable that he shall be permitted, while he retains the thing granted, to recover the price to be paid for that grant.

Besides, in this case, so far from being intentionally party to a fraud, as was *Clark* in the case referred to, the defendant has studiously avoided every thing like actual fraud. It has been decided in *Massachusetts*, that if the security given for the price of property sold, proves of no value, or the purchaser, by the informality of the sale, or want of title in the seller, fail to become the owner, it is such a defect of consideration as will avoid the security. *Bliss* v. *Negus,* 8 *Mass. R.* 46. *Parish* v. *Stone,* 14 *Pick.* 199. And a case more resembling this came before the same court, at a later period. A bill of sale was given by the plaintiff, to the defendant, of certain articles of personal property, for which the note in suit was given. These articles were suffered to remain in

possession of the plaintiff, as before ; and he sold and disposed of part of them, and then sued the note, claiming that it was the property of another man. *Shaw*, Ch. J. says, that the case stands upon the broad ground, that the consideration has failed. As between the parties, between whom the conveyance was not fraudulent, the using of this property must be taken to be a rescinding of the contract *pro tanto*, by mutual consent, and to the same amount a reduction of the note. *Dyer* v. *Homer*, 22 *Pick.* 261. And they rely upon *Bailey* v. *Foster*, where a note had been given by a vendee, on a conveyance of property made to defraud creditors, and that conveyance had been avoided, by an attachment. The court held the note could not be enforced against the purchaser. The contract is said to be good, except as to creditors and purchasers ; and the note good, until the contract was rescinded, by the parties thereto, or avoided by the creditors. 9 *Pick.* 139.

We advise the superior court to enter judgment for the defendant.

In this opinion the other Judges concurred.

Judgment for defendant.