HOYT *v.* MACON et al.

PLEADING AND EVIDENCE — *an immoral or illegal consideration as a defense to an action upon a promissory note.* Where G. had filed a *caveat* in the land office, charging fraud by M. in his application for a patent to certain lands ; and it was agreed by H. that if M. and one C. would execute to him their promissory note, he (H.) would influence G. not to appear at the land office as a witness upon the investigation of the alleged fraud ; and the note was executed and delivered to H. in an action upon the note.

*Held,* first. That the consideration might be shown in defense of the action, and the plaintiff (H.) could not recover, because

The courts will not sanction such a contract, it being contrary to law and good morals.

Second. That the courts will place the same estimate upon the transaction as the parties themselves did by their own actions in admitting the existence of grounds for the charge and inquiry, and contracting to suppress the same.

In such a case the courts will leave the parties where they are found, no matter who brings the action.

*An illegal consideration, when divisible,* so that a part may be distinguished as untainted by the illegality, will not entirely prevent a recovery upon the contract ; the good consideration will, in such cases, be sustained.

But, in this case, the abandonment of the *caveat* and the relinquishment of the improvements on the land by G. constitute one transaction in furtherance of the design to allow M. to fraudulently acquire the title to the land — so that the entire consideration is tainted with the fraud.

PRACTICE IN THE SUPREME COURT ; ASSIGNMENT OF ERROR *upon the giving of instructions.* Where the charge contains several distinct propositions, and exception is taken to the charge generally, if any one proposition be sound and correct, the exception will be unavailing.

*Error to District Court, Fremont County.*

THIS was an action of assumpsit, upon the following promissory note :

CANON CITY, C. T., }
$900.00          *January* 18, 1870. }

Sixty days after date, for value received, we or either of us promise to pay to S. N. Hoyt or bearer the sum of nine hundred dollars.

U. S. Rev. Stamp, }          AUGUSTUS MACON,
   50c. canceled. }          EDWARD CROUCH.

*Non assumpsit* was pleaded, and also a special plea that the said promissory note "was based upon an illegal and invalid consideration, in this, that before and at the time of the execution, making and delivery of said promissory note, the said plaintiff represented unto the defendant, Macon, that one John Griffin had filed a caveat in the United States Land Office, at Denver, Colorado Territory, alleging that said defendant, Macon, had fraudulently entered a certain tract of public land, to wit. : "   *   *   *   "and that he, the plaintiff, would influence the said John Griffin not to appear in the investigation of said fraud as a witness against the said defendant, Macon, if the defendant, Macon, would make the promissory note in said declaration mentioned, and obtain the signature of the defendant, Crouch, thereto, as surety, and knowing said John Griffin had filed said *caveat*, the defendant, Macon, did make the said promissory note, and procure the signature of the defendant, Crouch, thereto, as surety, and said note was executed for no other or further consideration whatsoever; this they are ready to verify," etc., to which plea the plaintiff demurred. Demurrer overruled, and plaintiff made replication " that the said promissory note in said declaration mentioned was not based upon the illegal and invalid consideration that he, the said plaintiff, would influence the said John Griffin not to appear as a witness against said defendant, Augustus Macon, in the investigation of the fraud of said Augustus Macon, in the entry of the land in said plea described, in the United States Land Office, at Denver, Colorado Territory, but on the contrary thereof, that the consideration of said note was valid and good, and other and different than that in said plea set forth and alleged, and this he prays may be inquired of by the country," and the defendants joined, *in similiter*, thereto.

The said promissory note was introduced in evidence before the jury, and the plaintiff rested. And the defendants, by their own testimony, and that of one other witness, sustained the special plea, no one contradicting their testimony.

Verdict, " We, the jury, find the issues for defendant."
Motion for a new trial overruled ; judgment for defendants
on the verdict. Errors assigned : First, Overruling the
motion for a new trial. Second, " The judgment of the
court is erroneous in not following the verdict." Third,
" The court erred in giving the following instruction to the
jury, to wit:" Under this assignment all the propositions
submitted to the jury are set out as one instruction.

Mr. L. B. FRANCE and Mr. M. A. ROGERS, for plaintiff in
error.

Mr. ORRIS BLAKE and Mr. ALBERT S. BLAKE, for defend-
ants in error.

BELFORD, J.   Whether or not a party to a written instru-
ment may go back of it to show that the consideration on
which it rests is illegal, forms a subject on which the decis-
ions of courts are far from uniform.   The maxim *nemo
allegans turpitudinem suam audiendus*, while regarded as
inflexible between the parties, is nevertheless made to yield
to the interests of public policy, and the duty of prevent-
ing the accomplishment of fraudulent and illegal designs.
The test prescribed by some courts is, whether the plaintiff
requires the aid of this illegal transaction to establish his
case (*Swan* v. *Scott*, 11 S. & R. 164), and that, if he does
not, the defendant cannot set up his own iniquity as a
defense.   *Stewart* v. *Cramer*, 6 Watts, 453.   On the other
hand, it is contended that the law ought not to interfere to
further the ends of the guilty ; that, if the contract is
executed, it will not be enforced.   *Smith* v. *Hubbs*, 1 Fairf.
71 ; *Nellis* v. *Clark*, 20 Wend. 24.   Courts should be slow
to help parties out of the mire who have voluntarily thrown
themselves into it, or aid them to reap the wages of iniquity,
when their enrichment would be at the expense of public
morals.   And this aid would be furnished if, after the law
has pronounced a deed or contract void, the courts should
withhold the power to take advantage of the invalidity, and

show in what it consists.   We are, therefore, of the opinion that the admission of the evidence, showing the character of the consideration on which this note was founded, was entirely proper.   In *Holman* v. *Johnson*, Cowp. 343, Lord MANSFIELD said : " The objection that a contract is immoral or illegal, as between plaintiff and defendant, sounds, at all times, very ill in the mouth of the defendant.   It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to real justice as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this, *Ex dolo malo non oritur actio.*   No court will lend its aid to a man upon an immoral or illegal act.   If, from the plaintiff's own stating, or otherwise, the cause of action appears to arise *ex turpi causa*, or the transgression of a positive law of this country, then the court says he has no right to be assisted.   It is upon this ground the court goes, not for the sake of the defendant, but because they will not lend their aid to such a plaintiff.   So if the plaintiff and defendant were to change sides, and the defendant were to bring his action against the plaintiff, the latter would then have advantage of it, for when both are equally in fault *potior est conditio defendentis.*   Another learned writer, speaking to the same subject, says : " When an illegal contract or transaction cannot be enforced or allowed to stand without producing the evil which the law designs to prevent, the illegality may be pleaded or given in evidence as a bar to a suit brought to enforce the contract.   For, under these circumstances, the welfare of society and the vindication of the laws are the chief objects, and the rights of parties but of secondary importance."   *Collins* v. *Blantern*, Smith's Leading Cases, vol. 1, p. 700.   These remarks clearly show the principle upon which the rule rests and commend its soundness to our approval.   Does this case fall under the ban of the common law ?   We might answer that any case does, whose features are contrary to good morals, or the principle of which tends to corrupt or contaminate by improper influen-

ces the integrity of our social or political institutions. From the evidence, it appears that one Griffin had filed in the land office a .*caveat* against the issuance of a patent to Macon, setting up that the latter had never been in possession of the land, and that his application for a patent was fraudulent and in violation of the law. It further appears that Hoyt, in consideration that Macon would execute this note and pay him the amount of money expressed in it, would procure Griffin to abandon the prosecution of the *caveat*, and relinquish to Macon the possession of the land, which Macon was seeking to have patented.

Pursuant to this agreement the note was executed, the proceedings on the *caveat* abandoned, and the land relin quished by Griffin. It is not difficult to perceive that this transaction was immoral and illegal. It was enabling Macon to procure this land through fraud and by an open violation of the law, which required him to reside on and improve the land. When the design is illegal, the law interferes and says : You shall not stipulate for iniquity, and the courts must drop the parties where it finds them. When Hoyt induced Griffin to abandon the contest, he put it in the power of Macon to perpetrate a fraud on the government, and now he cannot be heard when he claims the wages of his prostitution and depravity. It is claimed by the plaintiff in error that it is not shown that Macon was attempting to obtain the land illegally; that no presumptions as to illegal conduct on the part of Macon can be indulged, and that, before the note can be regarded as void, it must affirmatively appear that Macon was intent on the commission of an illegal act. When one charges another with the commission of a crime, or a violation of the law, and the latter performs an act having directly in view the stifling of the investigation or the withdrawal of the proceedings instituted for the purpose of determining the existence of the offense, this act must be regarded as an admission, on the part of the person doing the act, of the existence of certain grounds for the charge, and in such case the court will place the estimate ·upon the conduct of the parties that they themselves have placed upon

it. *Brown* v. *Burk*, 28 Vt. 312; *Gardener* v. *Maxcey*, 9 B. Monr. 93; *Coppock* v. *Bower*, 4 Mees. & Wels. 365.

If this were not true, courts would present the strange spectacle of trying a person for a misdemeanor or felony whenever it became necessary to show that a note sued on was given in composition of a crime, or to suppress a prosecution.

When Hoyt charged Macon with having made a fraudulent entry of the land, through perjury committed by him, and Macon executed the note to avoid an investigation then pending, and threatened to be pressed, he thereby indicated that there was something wrong in his proceedings which required to be covered up.

We think the case at bar is analogous to those cases where notes have been executed to suppress proceedings in courts of justice. A contract, the basis and purport of which is to secure title to land in a manner inhibited by an act of congress, and through the agency of perjury, and to which object the payee contributed by a suppression of the truth, has a tendency to debauch both private and public morals, and cannot receive the sanction of a court.

It cannot be said that this contract involved the compromise of a doubtful right which Griffin might have had to the land. The moving, paramount consideration was the suppression of the investigation of the charges which Hoyt was making, namely : that Macon was attempting to obtain title by perjury and fraud.

It is claimed, however, that the consideration of the note is divisible, and that, inasmuch as Griffin relinquished to Macon the improvements he had made on the land, this relinquishment was a good consideration, and that the action could be sustained. It might be sufficient to say that no evidence was offered showing that the improvements were separately valued, or the price fixed upon them, and the case as it is presented does not fall within the rule laid down in *Carleton* v. *Wood*, 28 N. H. 290, where the goods sold were valued separately from the liquors. In that case, however, the recovery was had on the common counts and

the note ruled out. See also *Ladd* v. *Dillingham*, 34 Me. 306. In *Robinson* v. *Bland*, 2 Barr, 1071, 1082, the action was on a bill of exchange for $672, of which $300 was for money lent, and $372 for money won at play, and the action was sustained on the common count, and not on the bill. But it will be perceived that the amount of money lent was ascertained, and the good consideration readily distinguished from the bad. We admit that there are cases where recoveries have been sustained for the original consideration, although connected with illegal or forbidden transactions; but they are cases wherein the plaintiff was not considered a wrong-doer, or was the victim of the defendant, so that a denial of relief would be an encouragement to the wrong-doer, and thus the law be made to work its own defeat. *Lange* v. *Work*, 2 Ohio St. 526; *Saratoga County Bank* v. *King*, 44 N. Y. 91.

Mr. Justice WASHINGTON in *Toler* v. *Armstrong*, 4 Wash. C. C. R. 299, says:

"I understand the rule as now clearly settled to be, that where the contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it, and if the contract be in part only connected with the illegal transaction, and growing immediately out of it, though it be in fact a new contract, it is equally tainted by it." This same case is reported in 11 Wheat. 258, and MARSHALL, C. J., lays down the rule to be, that if the illegal act is not the consideration of the contract, and is entirely disconnected from it, the contract is valid, though the occasion for making the contract arose out of the existence of the illegal act. In the case at bar, the abandonment of the *caveat* and the relinquishment of the improvements on the land by Griffin constitute one transaction, and are in furtherance of one common design, pursued by Hoyt and Macon, namely, to enable the latter to fraudulently obtain the patent, and acquire the title to the property. Such being the case, we think the entire consideration on which the note rests is tainted. We have said this much as to the merits of the case, notwithstanding no

reference to the evidence has been made in the assignment of errors. We decline to consider the instructions, for the reason that the entire charge is embraced in a single assignment. In *Westcott* v. *Bock,* decided at the last term of this court, we used this language : "A charge is made up of a series of propositions interdependent in one sense, yet distinct in another. Some may be correct, others wrong. Where a party assigns error to an entire charge, we think each proposition announced by the court should be regarded as a separate instruction and should be specifically assigned. It is well settled that, if a series of propositions be embodied in instructions, and the instructions are excepted to in a mass, if any one of the propositions be correct, the exception must be overruled." *Johnston* v. *Jones,* 1 Black, 220.

The judgment of the district court is

*Affirmed.*