## BROWN ET AL. V. KENNEDY

1. PRE-EMPTION FOR BENEFIT OF ANOTHER — ILLEGAL CONTRACT.— A contract between the claimants of a stone quarry on government land and a second party, whereby the latter is put into possession of the land in which the quarry is situated, the terms of the agreement being that the latter party is to file on the land as a pre-emptor, the first party to pay for the filing, furnish the price of the land and take the title, is an illegal contract and incapable of enforcement.

2. AGREEMENT BASED ON FORMER ILLEGAL CONTRACT — INVALID CONSIDERATION.— A subsequent agreement, stipulating that the pre-emptor, on payment of a certain sum of money to the first party, should become half owner of the quarry and business, the first party to have full control of the operation of the quarry, the second party to make all sales of stone and collect all bills, and the expenses and profits of the business to be equally shared by the parties, being wholly based on and interwoven with the first contract, shares its infirmities and is likewise incapable of enforcement. The second party being in possession of the land the first party had no rights to transfer to him, save under the illegal contract.

3. CONTRACT CONTAINING LEGAL AND ILLEGAL PROVISIONS NOT SEPARABLE, NOT ACTIONABLE.— Where portions of a contract are legal and other portions thereof illegal, but all are so blended as to be incapable of separation, an action cannot be maintained to enforce any part of it.

4. GENERAL STATUTES 1883, SECTION 2686, NOT APPLICABLE TO UNITED STATES HOMESTEAD LAWS.— The statute of this state regulating the rights of settlers upon government land as between themselves (Gen. St. 1883, sec. 2686) is not applicable to land held under the pre-emption or homestead laws of the United States.

5. IMPROPER PARTIES — ERROR TO RENDER JUDGMENT AGAINST.— The appellants were not proper parties to this action in any event. They were merely lessees under Brown of the stone quarry, and no personal liability as against them in favor of the plaintiff having been alleged or proven, it was error to render a personal judgment against them.

*Appeal from District Court of Arapahoe County.*

THE plaintiff, John Kennedy, and one McMonagle were claimants of a certain stone quarry, which had been opened upon government land situated in the county of Larimer. They put the appellant, Andrew Brown, into

possession, and procured him to file upon said land in the United States land office a pre-emption claim for their use and benefit. They paid all expenses attending such filing, and were to furnish the money to pay for the land when entered, and the title was to come to them. Brown was their employee.

This filing was done in December, 1880. Shortly afterwards the plaintiff purchased the interest of McMonagle, and on the 3d day of March, 1881, entered into a written agreement with Brown, which is as follows:

"This agreement, made this 3d day of March, A. D. 1881, by and between John Kennedy, of Denver, Colorado, and Andrew Brown, of Larimer county, Colorado, witnesseth: That whereas, the said Andrew Brown has heretofore filed upon, and is now in possession of, the following described land: Southeast quarter of northeast quarter, and east half of southeast quarter, southwest quarter of southeast quarter of section 7, township 6, of range 69 west, and has opened and is operating a stone quarry upon said land; and whereas, the said Andrew Brown did file upon, remain in possession of said land, and has run and operated said stone quarry for the use and benefit of said John Kennedy, in consideration of certain compensation for wages being paid him, the same being fully paid: Now, it is hereby agreed by and between the parties hereunto that from the date of this agreement said Brown shall operate said quarry to the best of his ability and to the advantage of both parties. That he will quarry and ship stone to John Kennedy, at Denver city, Colorado, or to whatever place said John Kennedy shall designate, and that all stone taken from said quarry shall be consigned to John Kennedy. And the said John Kennedy agrees to receive, sell and dispose of all stone received from said Brown; to sell the same to the best advantage, profit and price to be had. And the parties hereto agree to keep a strict and true account of all expenses resulting from the quarrying, shipping

and sale of stone, and account to each other for the same every thirty days from this date; the said Brown to have complete control of working and operating the quarry, and said Kennedy have complete control of the sale and disposal of all stone and collections due on account of such sales. Said Brown further agrees to pay the sum of $523.75 — being one-half the cost of the said quarry — to John Kennedy, and thereafter to be a one-half owner in said quarry and business. Each of said parties hereby agrees that neither of them will contract any debt or debts on account of or against them jointly, without the consent of the other. All or any debt or account contracted by either party hereto, other than actual expense of the business, shall be an individual matter, and the other party shall not be liable for the payment of the same. It is hereby expressly agreed and understood by and between the parties hereto that said John Kennedy shall not be held responsible or liable for any debt or account made or contracted by said Andrew Brown, and that said Andrew Brown shall not be held liable or responsible for debts or accounts made by said John Kennedy. It is further agreed that, should either of the parties wish to withdraw from this agreement, he shall allow the party the privilege of buying his interest, and that neither shall offer for sale his interest to certain parties without the consent of the other.

"In witness whereof the parties hereunto have hereunto set their hands and seals this day and year first above written.                    "JOHN KENNEDY.    [Seal.]
                                          "ANDREW BROWN.   [Seal.]
    "Witness: EPH. LOVE."

Brown and Kennedy operated the quarry under this agreement until the 3d day of May, 1881, at which time a dispute arose between them; and Brown thereafter refused to recognize the agreement as binding, and operated the quarry on his own account, and to the exclusion of Kennedy.

In December, 1881, Kennedy brought this action against Brown in the district court of Larimer county, from whence it was removed to the district court of Arapahoe county. The plaintiff declared upon this agreement as a copartnership agreement, alleged certain breaches thereof, and prayed for a dissolution of the partnership and for an accounting, etc.

Brown answered, admitting the execution of the agreement, but denying the partnership and the breaches, etc.; claiming that no partnership was created by or under the said agreement, and averring that he filed on the land for his own exclusive use, and that he had changed such filing to one of homestead on the 3d of May, 1881.

Kennedy subsequently filed a supplemental complaint, alleging that the appellants, the Greeley, Salt Lake & Pacific Railroad Company and the Union Pacific Railway Company, were in possession of the land and quarry under a lease from Brown, and asking that they be made parties defendant to the action, which was done.

Issues were joined and proofs taken, and upon a hearing had a decree was rendered in favor of the plaintiff against all three of the defendants. From this decree the two defendant companies have appealed to this court, Brown not joining in the appeal.

Messrs. TELLER & ORAHOOD, for appellants.

Messrs. PATTERSON & THOMAS and A. W. BRAZEE, for appellee.

DE FRANCE, C. The decree appealed from is substantially but a personal money judgment against the defendants for the sum of $1,360 and costs. No personal liability of the appellants, or either of them, to the plaintiff is disclosed by the pleadings or the evidence, and for this reason the decree, in so far as the same is a personal judgment against the appellants for the payment of money, is erroneous.

The pre-emption law of the United States, under which Brown made his filing, prohibits the entry of land by one person for the benefit of another, and the agreement to that effect between these parties was therefore illegal.

The appellants assailed the written agreement, which forms the basis of this action, as one based upon or connected with the previous illegal agreement, and as so tainted therewith as to render the latter invalid. The written agreement recognizes the existence of the illegal agreement, and makes no provision for a discontinuance thereof. On the contrary, it provides that Brown shall pay Kennedy the sum of $523.75 for a one-half ownership in the "quarry and business."

In his petition for a receiver, filed in this case, Kennedy alleges that the land filed upon by Brown and containing the said stone quarry "is of little or no value, except for the purpose of operating and working said quarries thereon."

The following questions and answers appear in the testimony given by Kennedy in this case: "*Question.* State the circumstances under which the articles of agreement set out in the complaint was drawn, and where it was drawn? *Answer.* The agreement was drawn to better my condition in running the quarries, in Mr. Love's office at Fort Collins. Mr. Brown and Mr. Love and myself were present. *Q.* What was said by Mr. Brown to you, and by you to Mr. Brown, immediately before the agreement was drawn, about the kind of an agreement, and for what purposes? *A.* I told him that I wanted stone to make the money out that he was calling for; and I told him that I wanted to have a fresh deal; and I told him that I would give him a half interest, and he said he would take it. I told him I would go into partnership with him, and give him a half interest. Brown and me both gave Love some instructions as to the agreement to be drawn. Love drew up the most of it himself." This testimony was offered by the plaint-

iff, and received over the objections of counsel for defendants. In the light of these facts, it seems clear to us that the acquisition of a one-half ownership in the quarry was a part of the consideration on Brown's part for entering into said agreement. The land having little or no value except for the stone it contained, there is but little foundation for drawing a distinction between the land and the quarry. Under such circumstances, we think the land and the quarry must be held to be one and the same thing, so far, at least, as the parties to this contract are concerned.

Now, how was Kennedy to acquire title to the land so as to invest Brown with one-half ownership? Brown was then in possession of the land, and by the terms of the written contract was "to have complete control of working and operating the quarry." There is no evidence of any provision having been made to secure title to the land, except through and by means of the illegal agreement. We can arrive at no other conclusion from a consideration of the agreement itself and the surrounding facts, than that it was the intention of the parties to the agreement for Brown to secure the title to the land under the illegal agreement, and for him and Kennedy afterwards to adjust the matter between them in accordance with the terms of the written agreement.

If the contract simply provided for a joint adventure to work the quarries and divide the profits, there could be no doubt, we think, of its legality; or, if it were such that the legal part could be separated from the illegal part, then it might, perhaps, be considered as two contracts, and the legal contract enforced. But it is not susceptible of such division. As it reads, before Brown can have an interest in the business to be carried on thereunder, he must pay the sum of $523.75. He is to pay this sum for a half ownership in the " quarry and business." How much of it was to be paid for a half interest in the business, and how much for a half interest in the quarry,

cannot be determined from the contract. Thus the legal and illegal parts are so blended as to be inseparable. It is manifest, therefore, that the clause in the contract relating to the acquisition of an ownership by Brown constitutes the principal, and it may be said the only, consideration upon which Brown entered into the same.

If this be the proper construction of the contract, then it will be seen that both parties were to partake of the fruits to be derived from an act to be done in violation of law. Where such is the case, and the same is made to appear to a court of justice in an action brought to enforce the contract, the court simply leaves the parties where it finds them, and refuses any relief. In support of these views we cite *Railroad Co. v. Taylor*, 6 Colo. 1; and *Hoyt v. Macon*, 2 Colo. 502.

If the contract of March 3, 1881, were considered to be valid as against Brown, how does it affect appellants, and are they proper parties to this action? They were made parties upon the theory that Kennedy had some lien upon the quarry, or the use thereof, which he was entitled to have enforced in and by the action; and, if no such lien existed, they were not proper parties. It is alleged, and was found by the court, that they had accepted the lease from Brown with notice of Kennedy's rights and equities. Brown avers in his answer that he changed his pre-emption filing upon the land to that of a homestead filing on the 3d day of May, 1881, and this fact is not controverted. On that day he notified Kennedy to the effect that the agreement of March 3, 1881, should no longer be binding, and at the same time claimed the quarry as his own. Kennedy, upon the same day of such notice, removed from the quarry the team and tools then in use at such quarry in the working thereof, and subsequently took no action to claim or insist upon his rights under said agreement until the bringing of this action. After giving such notice to Kennedy, and asserting his ownership to the quarry, Brown operated the

quarry for his own benefit and upon his own account, and to the exclusion of Kennedy.

There is nothing in the written agreement which would prevent Brown from making the change in his filing from that of a pre-emption to a homestead claim. The law will not censure, but rather commend, his act in thus withdrawing from and repudiating the former illegal agreement, which, to have carried the same out on his part, would have involved him in the crime of perjury. When Kennedy and McMonagle placed Brown in possession of the land under the agreement that he should file upon and enter the same under the pre-emption law for their benefit, they lost their possessory rights to said land, and could not have recovered the possession back from Brown, had he seen fit to repudiate such agreement. Kennedy occupied no better position after his purchase of McMonagle's interest. In an action to recover back such possession from Brown, the aid of the illegal agreement would have been required in support of such action. *Swan v. Scott*, 11 Serg. & R. 164; *Wright v. Pipe-line Co.* 101 Pa. St. 204. The law will not afford to guilty parties any relief against the consequences of their own illegal acts. The transfer of property for an unlawful purpose is valid as between the parties to such transfer. Bump, Fraud. Conv. 436.

The law of this state regulating the rights of settlers upon government land, as between themselves, has been cited as having some bearing upon the questions involved in this case, but the statute upon this subject has no force as applied to land which has been filed upon and is held under the pre-emption or homestead law of the United States. Sec. 2686, p. 787, Gen. St. 1883. When Brown filed upon the land under the homestead act it became his as against all persons except the United States government. This homestead act provides that land acquired under its provisions shall in no event "become liable to the satisfaction of any debt contracted prior to

the issuing of the patent therefor." Sec. 2296, Rev. St. U. S. 1873–75. Now, if Kennedy were allowed a lien upon the quarry, or the use of the quarry,— the quarry being a part of the land,— it would be an infringement upon this provision of the homestead law; for, whatever debt or claim may exist in favor of Kennedy against Brown, the same was incurred by Brown before he made his filing under such homestead act. The right to use land, and to take from it that part or any portion of that part which constitutes its value, does not fall short of an interest therein.

Should the view be taken that this was a partnership contract, and that the right to work the quarry thereunder was a partnership asset, then such right did not extend beyond a dissolution of the partnership. The partnership, if any existed, was a partnership at will, and dissoluble at the pleasure of either partner; for the contract does not provide any definite period for the duration of such partnership. Pars. Partn. 401; 1 Lindl. Partn. 218. We think, under the facts, that a dissolution took place on the 3d day of May, 1881, when Brown notified Kennedy that the agreement should no longer be binding. This was a mere partnership in the profits to be derived from working the quarry if any partnership existed. The land belonged to Brown, as between him and Kennedy. Any lien, therefore, which Kennedy might have as a partner could not extend to the land, as it was not partnership property. 2 Lindl. Partn. 680–682, inclusive.

In any view, therefore, that may be taken, the appellants are not proper parties to the action. But we do not think the contract valid as against Brown, and therefore we think that the decree should be reversed and the action dismissed.

STALLCUP, C., dissents.

PER CURIAM.    For the reasons stated in the foregoing opinion the judgment is reversed and the cause remanded, with directions that the same be dismissed.

*Reversed.*

MR. JUSTICE ELLIOTT not sitting, having tried the case below.