## No. 19,468.

## M. B. THOMPSON *v.* WILLIAM R. McCORMICK.

(370 P. [2d] 442)

Decided March 12, 1962.   Rehearing denied April 23, 1962.

Mr. ALBIN ANDERSON, JR., for plaintiff in error.

Messrs. MILENSKI and PARGA, Mr. FRED M. WINNER, Mr. WARREN O. MARTIN, for defendant in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

THE parties appear here in the same order as they appeared in the trial court and they will be designated accordingly.

The complaint was filed May 7, 1953, with the plaintiff asking for appointment of a receiver and an accounting. On March 12, 1955, judgment was entered dismissing the case with prejudice due to the failure of the plaintiff to appear and prosecute. On writ of error by plaintiff this Court ordered that the judgment of dismissal be reversed with directions to proceed with the trial of the case on its merits. *Thompson v. McCormick,* 138 Colo. 434, 335 P. (2d) 265 (1959). A supplemental complaint was filed in the trial court on March 11, 1959, in which it was alleged that the defendant had invested the partnership assets with such skill that he had acquired properties and money having an alleged value of in excess of six million dollars. There was a prayer to establish an equitable lien on the defendant's property.

The case came on for trial to the court without a jury by agreement of the parties on January 25, 1960. After hearing the evidence presented by both parties the court found for the defendant. From this judgment plaintiff brings error.

Plaintiff urges three grounds for reversal:

1. That the trial court erred in holding there was no partnership.

2. That the trial court erred in concluding the agreement was void as against public policy; and

3. That the trial court erred in denying plaintiff's motion to produce the records of McCormick Mines.

The evidence is that on November 13, 1951, the United States Atomic Energy Commission entered into a lease with the defendant individually whereby certain mining claims in San Miguel County, Colorado, known as the Otero and Eloisa, were leased to the defendant. This lease was later twice renewed. On December 1, 1951, plaintiff and defendant executed an instrument which in the caption thereof is designated "Partnership Agreement," and which reads as follows:

"PARTNERSHIP AGREEMENT

"THIS AGREEMENT, made and entered into this first day of December A. D. 1951, by and between Melvin B. Thompson of Cortez, Colorado, party of the first part, and William R. McCormick of Dove Creek, Colorado, party of the second part, WITNESSETH:

"That the said parties hereby enter into a full partnership for the purpose of carrying on a mining enterprise near Dove Creek, Colorado, the enterprise to be known as McCormick Mines.

"Melvin B. Thompson is to be the silent partner and he is not to be openly known as a partner in the enterprise; the said William R. McCormick is to be the managing partner and in the eyes of the public, the sole owner.

"The said Melvin B. Thompson is depositing in the Citizens State Bank of Cortez, Colorado, the sum of Ten

Thousand Dollars ($10,000.00) in the name of McCormick Mines. All checks and all managements of this fund, and all other properties belonging to McCormick Mines are to be under the sole management of William R. McCormick.

"All profits and losses in this venture are to be borne equally by the two partners.

"The length of time of the partnership is indefinite.

"In case of the death of either partner, the other partner is to carry on the activities of the partnership subject to the approval of the heirs. In case of the death of both partners, each partner's interest is to go to his legal heirs.

"IN WITNESS WHEREOF, the said parties have hereunto set their hands at Dove Creek, Colorado, this first day of December A. D. 1951."

Then followed the signatures of the parties and acknowledgment by C. H. Webb, Notary Public.

This agreement was executed in defendant's office Plaintiff apparently dictated the text of the agreement to C. H. Webb who then typed up the instrument. Webb, who died before the trial of the case, was an accountant who had rendered services for defendant, and was subsequently to act for the partnership. At the time of the trial, defendant testified that it was agreed that Webb should hold the instrument until plaintiff contributed the $10,000.00. This was denied by plaintiff. One copy of the agreement was given to defendant and the other retained by Webb.

The record further shows that on November 29, 1951, plaintiff and defendant secured a loan of $5,000.00 from the Citizens State Bank in Cortez. Roland Usher, President of the Bank, subsequently testified by deposition that he was told by both plaintiff and defendant at that time that they were partners and that the partnership agreement was in the office of C. H. Webb in Dolores. The note for this loan was signed by plaintiff and defendant on November 29, 1951. On that date an account was opened in the Cortez Bank in the amount of $5,000.00

for McCormick Mines, in care of William R. McCormick, Dove Creek, Colorado. On February 1, 1952, another bank note for $5,000.00 was signed by the two parties, the proceeds of which was also deposited in the account of McCormick Mines. These notes were paid and cancelled and became a part of the records of McCormick Mines. Defendant's Exhibit A-1 which is a copy of a Liability Ledger of William R. McCormick under the caption of "New Loans" with the name of Melvin B. Thompson in front of each shows two loans of $5,000.00 each.

In accordance with the terms of the partnership agreement, defendant managed the property, hired the help, kept the books, and arranged for the necessary machinery in connection with the mining operation. He also divided the profits with plaintiff in installments totalling $20,500.00 for each party. These distributions were made during the period from June 10, 1952, to November 15, 1952. During all of that time the relationship of the parties was that of partners with no apparent discord until plaintiff questioned some of defendant's expenditures made from the partnership funds.

Various exhibits were introduced by plaintiff and defendant and admitted in evidence; among them were the following: an application for workmen's compensation, reports to determine liability, and employees' contribution reports, all signed by defendant as a partner. Apparently defendant acknowledged the partnership even after stopping distribution of profits and up until February 1, 1954, for on December 14, 1953, he had his then attorney write a letter to the State Compensation Fund in which it was stated that the policy which was surrendered was to be cancelled because in the joint partnership names and "These two men are *no longer* associated, and Wm. R. McCormick is carrying on the business as a sole proprietorship under the name of McCormick Mines. Consequently, you are hereby requested to amend your records effective on the reissue date of February 1, 1954, * * * ." (Emphasis supplied.) His ter-

giversation in regard to these matters is clear from this record.

There is also an exhibit indicating the distributions made to the partners and a U. S. Partnership Return of Income signed by plaintiff as partner for the fiscal year ending November 30, 1962.

Defendant testified that he first demanded plaintiff's deposit of the $10,000.00 provided for in the agreement, in June or July of 1952. Plaintiff on the other hand denied that defendant had ever asked him for the money, and contended that by signing the notes for $10,000.00 he had made his required contribution.

The record indicates that defendant continued to make distributions to plaintiff up to November 15, 1952, when he issued checks to plaintiff and himself, each in the amount of $5,000.00. Apparently the good relations of the parties terminated early in 1953 and defendant subsequently denied that a partnership had ever existed.

The trial court concluded, inter alia, as follows: (1) That the plantiff's contribution of $10,000.00 was a condition precedent to the formation of any association whatsoever; (2) That the document signed by the parties on or about December 1, 1951, denominated "Partnership Agreement" was only a declaration of intention and remained as such due to the failure of the plaintiff to comply with his part of said agreement; (3) That at no time did the defendant waive the default of the plaintiff; (4) That the plaintiff received $20,500.00, for which there was no consideration moving from him; (5) That any association for the purpose of exploring and working claims under the Atomic Energy Commission was void as against public policy; (6) That the various exhibits which defendant signed as a partner did not hold out to the public that there was a partnership; (7) That no partnership ever existed herein; (8) That the plaintiff failed to prove the material allegations of his complaint by a preponderance of the evidence.

For reasons which hereafter appear we are unable to agree with the findings and conclusions of the trial court. As heretofore stated defendant urges that the agreement was not to become effective unless and until plaintiff deposited or advanced $10,000.00 in cash. We do not so read it. The instrument of December 1, 1951, is clear on its face. Under its terms the parties had entered into a full partnership. The payment or deposit of the plaintiff's $10,000.00 thereby became a fixed capital contribution and obligation unless waived by defendant or satisfied by the co-signing of the two notes for $5,000.00 each. It was not a condition precedent to the actual creation of the partnership itself. Nor was it a payment to defendant for the privilege or right to acquire a share in an existing business. In this connection it is well to remember that upon a dissolution of the partnership and payment of its debts, capital contributions (unless not paid or unless waived) would be returned to the contributing partner before division of the net profits. See *Uniform Partnership Act,* C.R.S. '53, 104-1-40 (2) (c).

The statute defines a partnership as " * * * an association of two or more persons to carry on, as co-owners, a business for profit." C.R.S. '53, 104-1-6. These requirements are met here. It is specifically stated in the agreement that "all profits and losses in this venture are to be borne equally by the two parties." Thus a consideration, in the form of mutual promises, is spelled out in the agreement itself. There is nothing in this record to support a conclusion to the contrary. In this regard we follow the holding of *Roberts v. Roberts,* 113 Colo. 128, 133, 155 P. (2d) 155 (1944), where it was said:

"The agreement entered into between the plaintiff and defendants clearly embodies every element necessary for the formation and creation of a partnership, and when it was executed by the parties nothing further remained to be done to legally bring about a partnership relation. This relation would continue until it was dis-

solved either by mutual agreement or by action of the parties or decree of court."

Here the record indicates that this partnership continued and was in fact accepted by defendant, as evidenced by his distribution of plaintiff's share of the profits through November 1952, and by the filing of certain papers in the partnership name. The applicable rule in such circumstances is that "The intention of the parties and their interpretation of their contract before controversy arises is one of the best indications of their true intent." *Western Motor Rebuilders, Inc. v. Carlson,* 138 Colo. 404, 335 P. (2d) 272, 279 (1959).

Assuming that the co-signing of the notes was not in fact the $10,000.00 contribution visualized to be made by plaintiff when the agreement was signed, nevertheless the failure by a partner to contribute his share of capital does not necessarily negative the existence of a partnership. Such failure may be waived by the other partner, where as here following execution of the agreement, McCormick authorized and made payments of profits to plaintiff. See 68 C.J.S. 413, section 9, PARTNERSHIP — *Partnership-Consideration.* The other side of the coin is that if the partnership had incurred losses there is no question but that plaintiff would have been liable for his share of the losses under the terms of the partnership agreement. This clearly indicates that the parties intended him to have an equal share of the profits.

In addition, part of the evidence here is that defendant was at first dubious of success in mining the lease in question, and that he wanted to spread the risk by having plaintiff go in with him. By doing so plaintiff in effect grubstaked defendant by co-signing the notes and thereby became entitled to his agreed share of the profits. Compare *Smaller v. Leach,* 136 Colo. 297, 316 P. (2d) 1030 (1957); cert. denied 356 U.S. 936 (1958).

The wording, the meaning of which is in dispute, is: "The said Melvin B. Thompson is depositing in the

Citizens State Bank of Cortez, Colorado, the sum of Ten Thousand Dollars ($10,000.00) in the name of McCormick Mines." It should be noted that this language is in the present tense and there is nothing to indicate a condition precedent. Rather, the implication is that the act in question has already been accomplished. This language, coupled with the two notes for $5,000.00 each, cosigned by plaintiff, one before and one after the execution of the partnership agreement, and the admission by defendant to the president of the Cortez Bank that he and plaintiff were partners, are enough to establish plaintiff's theory of the case.

Even if the $10,000.00 were to be considered as an additional contribution required of plaintiff, defendant's view would still not prevail. As is said in *Lanpher v. Warshauer,* 28 Cal. App. 457, 460, 152 Pac. 933, 934 (1915):

"But we do not understand it to be the law either that a partnership is dissolved by the failure on the part of one of its members in some respect to perform his duty or obligation to it, or that he thereby loses his right to come into a court of equity and have an accounting and settlement of the partnership affairs."

See also *Bowen v. Velliquette,* 153 CA (2d) 847, 315 P. (2d) 95, 97 (1957), where it was said:

"While it appears that plaintiff did not contribute the sum of $7,500.00 to the partnership capital, it does not necessarily follow that the partnership did not exist * * * nor does it appear that plaintiff lost his rights as a partner by failing to pay the said sum."

The Court then cites the above quotation from *Lanpher* as authority for its views.

■ This rule followed by the California courts, and courts of several other states as well, especially those that have adopted the Uniform Partnership Act, seems to us to be eminently sound. Once a partnership is found to exist, the fact one partner has failed to make the required capital contribution is no reason to impose

a forfeiture when the contribution can be deducted from his share of the profits. See *Bowen,* supra.

■ Defendant also urges that even if a partnership was intended and in fact created that it was void as against public policy on the ground that it is the policy of the Atomic Energy Commission to lease to individuals only; also, that the lease prohibited this type of agreement. He further contends that it is illegal to form any type of association to exploit such a lease thereby placing in jeopardy his own net proceeds as well as plaintiff's interest. The difficulty with defendant's position is that both the applicable law and the evidence here are to the contrary.

Witness Paul Martin, an official of the AEC office in Grand Junction, Colorado, testified that so long as defendant was the sole operator of the lease (as this partnership agreement provided) and the partners only divided the proceeds there was no violation of the government lease and the AEC in effect had no interest in the matter. The nonassignability clause of the AEC lease provided:

"10. Neither this agreement nor any interest therein or claim thereunder shall be assigned or transferred by the Lessee except as expressly authorized in writing by the Commission."

This wording discloses that nothing is contained therein making the instrument void under the facts disclosed by this record, the wording being for the benefit of the government lessor exclusively so it could protect its interest in dealing with an approved operator of its choice.

Under the circumstances of this case a division of the profits may be enforced by a partner entitled to share in the profits. See 68 C.J.S. 411, section 7 a, PARTNERSHIP — Effect of Illegality of Purpose or Transaction — In General.

In *Brown et al. v. Kennedy,* 12 Colo. 235, 20 Pac. 696, (1888), a case cited by defendant in this connection, the court stated at page 240:

"If the contract simply provided for a joint adventure to work the quarries and divide the profits, there could be no doubt, we think, of its legality; or, if it were such that the legal part could be separated from the illegal part, then it might, perhaps, be considered as two contracts, and the legal contract enforced."

From what we have heretofore said leading to the conclusion that a partnership exists and that neither it, nor, as far as these parties are concerned, the government lease are void or illegal, it follows that it was error to deny plaintiff's motion to produce the records of McCormick Mines.

The judgment is reversed and the cause remanded with directions to the trial court to take such further action as may be necessary in the premises compatible with the views expressed herein.

MR. JUSTICE PRINGLE not participating.

On petition for rehearing MR. JUSTICE MOORE, formerly concurring, now dissents.