Rudi D. BAUMANN, Plaintiff-Appellee,

v.

Ronald H. RHODE, Larry L. Scripter; Rhode, Titchenal, Baumann & Scripter, a General Partnership; Rhode, Scripter & Associates, a General Partnership; and SBR Investments, a General Partnership, individually, Defendants-Appellants.

No. 83CA0831.

Colorado Court of Appeals, Div. III.

Oct. 17, 1985.

Dennis R. Frohlich, P.C., Dennis R. Frohlich, Boulder, for plaintiff-appellee.

Hurth, Yeager & Sisk, John M. Yeager, Boulder, for defendants-appellants.

METZGER, Judge.

Defendants, Ronald H. Rhode, Larry L. Scripter, Rhode, Titchenal, Baumann & Scripter (accounting firm), Rhode, Scripter & Associates, and SBR Investments, appeal from the trial court's judgment that a contract with plaintiff, Rudi D. Baumann, was ambiguous and subject to interpretation, and from the trial court's entry of judgment in favor of plaintiff in the amount of $6,759.30, plus interest and attorney fees. We affirm.

Plaintiff was an equal partner in the accounting firm, a general partnership. In September of 1979, defendants Rhode and Scripter negotiated an agreement to purchase plaintiff's partnership interest. This litigation arises out of one paragraph of the partnership sales agreement which provided in pertinent part that the bad debts listed in an attached exhibit were to be excluded from the sale:

> "and the parties agree that Seller [Baumann] shall be entitled to his interest of the profits received by [the accounting firm] ... as payment on any of the said accounts as said interest existed at the time of write-off."

Upon collection of the debts listed in the exhibit, a conflict arose as to whether plaintiff was entitled to one-fourth or one-third of the net proceeds.

Prior to this action, Titchenal, a former partner in the accounting firm who had retired under the partnership agreement in December of 1976, brought an action against defendants and plaintiff for violation of the partnership agreement. Defendants and plaintiff counterclaimed to recover monies which had been paid to Titchenal from the collection of the same bad debts at issue here. Defendants and plaintiff prevailed on their counterclaim, which effectively destroyed any interest Titchenal may have had in the bad debts.

On January 5, 1981, the accounting firm delivered an accounting to plaintiff, which showed a credit for one-third of the net proceeds in favor of plaintiff. It also showed a charge of $15,000, which defendant Rhode stated was the dollar value of the time the defendants had lost from their accounting practice in collecting the bad debts. Plaintiff disputed the $15,000 charge and defendant Rhode promised to give him an accounting of the charge. On January 16, 1981, plaintiff received a check for one-fourth of the net proceeds from the bad debts, with no further mention of the $15,000 charge. Shortly thereafter, plaintiff brought this action.

At trial, the court found that the agreement for sale of plaintiff's partnership interest was ambiguous in defining that interest, and further found that the agreement purported to define defendants' interest in the bad debts as well. The trial court reasoned that the parties had not expected to prevail on their counterclaim against Titchenal. However, their success in that litigation allowed defendants to assert, under the ambiguous terms of the contract, that plaintiff was entitled to a one-fourth instead of a one-third share in the proceeds from the collected bad debts. Finding the agreement to be ambiguous, the trial court received evidence of the parties' intent, concluded that the parties intended that proceeds from the collected bad debts be divided equally among them, and awarded plaintiff a one-third share.

## I.

Defendants first argue that plaintiff's trial data certificate did not specifically set out the ambiguity issue. Therefore, they contend, since the trial data certificate, like a pretrial order, controls the introduction of evidence at trial, *see Great West Food Packers, Inc. v. Longmont Foods Co., Inc.,* 636 P.2d 1331 (Colo.App.1981), the trial court erred in allowing plaintiff's testimony concerning ambiguity over their objection. Under the circumstances presented here, this argument is without merit.

C.R.C.P. 121 § 1–18(1)(c) provides that:

"The information provided and theories asserted by each party in its trial data certificate shall be binding on each party throughout the course of the trial unless modified to prevent manifest injustice."

Although plaintiff's trial data certificate does not specifically set forth the legal theory of ambiguity, it does state that "extraneous evidence will be introduced to clarify the intent of the parties concerning the division of the proceeds from the bad debt accounts." This evidence is the factual predicate upon which the legal ambiguity theory rests. Furthermore, since defendants relied upon the "general law of contracts" under their "points of law" in their trial data certificate, and, additionally, submitted at trial a legal memorandum entitled, "Trial Memorandum of Law Re: Ambiguity of Contracts," they were certainly aware of the ambiguity issue. Moreover, defendants introduced evidence relating to the ambiguity issue. Therefore, defendants were not prejudiced, and the trial court correctly admitted evidence relating to ambiguity and properly relied upon the ambiguity theory in its decision. *See Ficor, Inc. v. McHugh*, 639 P.2d 385 (Colo. 1982).

## II.

Defendants next contend that the trial court erred in construing the contract so as to give plaintiff a one-third interest in the bad debts. We disagree.

In order to determine whether contractual provisions are ambiguous, the language of the contract must be construed to give effect to the plain and generally accepted meaning of the words employed, and the agreement must be construed as a whole. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.*, 195 Colo. 253, 577 P.2d 748 (1978). Other evidence beyond the written contract is admissible to prove intent only if there is an ambiguity in the terms of the contract. *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc., supra.* And, if extrinsic evidence is admissible to resolve an ambiguity, the best evidence of the intent of the parties occurs before the controversy arises. *Thompson v. McCormick*, 149 Colo. 465, 370 P.2d 442 (1962).

The trial court found that the language of the contract, when read with its attached schedule of bad debts defining each partner's interest, was ambiguous, since the attachment contained a "percent" column listing some bad debts as one-third and some bad debts as one-fourth without further elaboration. It further found that the attachment simply defined which debts plaintiff might have an interest in and those in which he did not have an interest.

Accordingly, the trial court properly received evidence of the parties' intent after the litigation with Tichenal but prior to the rise of the present controversy. The evidence introduced, including accountings made by defendants showing that plaintiff owed one-third of the attorney fees in connection with the collection of the bad debt accounts at issue, supports the trial court's ruling that Rhode, Scripter, and Baumann intended to divide the proceeds equally. Therefore, the trial court correctly interpreted the contract so as to award plaintiff a one-third share.

## III.

Defendants next contend that the trial court erred in ordering interest to be paid on the judgment from November 25, 1980, instead of from January 20, 1981, as stipulated by the parties. We agree.

Plaintiff admits in his brief that he agreed that, if judgment were entered, interest would be calculated from January 20, 1981. Therefore, interest should be calculated from January 20, 1981.

Accordingly, this issue must be remanded to the trial court for a determination of the amount of interest owed plaintiff by defendants.

## IV.

Finally, defendants contend that the trial court erred in awarding plaintiff attorney

fees pursuant to the partnership sales agreement. We disagree.

The partnership sales agreement provides:

"In the event that legal action is necessary by either party hereto to enforce any of the terms herein, the non-defaulting party shall be entitled to payment from the defaulting party of all court costs, interest, and attorneys' fees with respect to said legal action."

Defendants contend that, since the trial court found that one of the terms of the contract was ambiguous, plaintiff is not "enforcing any of the terms" of the contract as required by the partnership sales agreement. This argument is without merit, as plaintiff is enforcing the contract terms as intended by the parties. *See Zambruk v. Perlmutter 3rd Generation Builders, Inc.,* 32 Colo.App. 276, 510 P.2d 472 (1973).

Plaintiff also seeks attorney fees for this appeal pursuant to the above provision of the partnership sales agreement. We agree that, in accordance with the terms of the agreement, plaintiff is also entitled to reasonable attorney fees incurred in the successful defense of his judgment. *Zambruk v. Perlmutter 3rd Generation Builders, Inc., supra.*

The judgment is affirmed and the cause is remanded to the trial court with directions to modify the judgment to award interest in accordance with the stipulation of the parties and to hold a hearing to determine reasonable attorney fees incurred by plaintiff upon appeal and to enter judgment against defendants for this additional amount.

BERMAN and TURSI, JJ., concur.