HOCKMAN, Respondent, *v.* SUNHEW PETROLEUM CORPORATION, Appellant.

(No. 6,921.)

(Submitted March 17, 1932.   Decided May 20, 1932.)

[11 Pac. (2d) 778.]

*Mr. L. P. Donovan* and *Mr. E. K. Cheadle, Jr.,* for Appellant, submitted a brief; *Mr. Cheadle* argued the cause orally.

*Mr. R. L. Clinton* and *Mr. W. M. Black,* for Respondent, submitted an original and a supplemental brief; *Mr. Clinton* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted August 29, 1930, by the plaintiff to foreclose a lien under the provisions of section 8375 of the Revised Codes of 1921, as amended by Laws of 1923, Chapter 152, for services rendered for the defendant on an oil-well located on property belonging to the United States, held and occupied by the defendant under a lease for the exploration and development of oil and gas. Upon issue joined the cause was tried to the court without a jury. After all evidence had been introduced and the trial concluded, the court made its findings of fact and conclusions of law in favor of the plaintiff on May 15, 1931. A judgment for $3,291.60, decreeing a foreclosure of the lien, and a deficiency judgment in plaintiff's favor, in the event the property did not sell for a sufficient amount to pay the sum found to be due the plaintiff, which included costs and attorney's fees, was regularly entered, from which the defendant has appealed.

No useful purpose will be served by extended review of the allegations of the complaint, and of all the defendant's voluminous answer and cross-complaint, designated by it as a "counterclaim." Suffice it to say that the plaintiff sought to recover judgment against the defendant upon an express contract for the performance of labor and the furnishing of machinery, material, tools, fuel and labor between March 23 and July 11, 1930, in cleaning out, drilling deeper and swadging pipe in a certain oil and gas well on the leasehold known as "Seabrook No. 1," for which it is alleged the defendant promised and agreed to pay the sum of $65 per day; that there became due and owing to the plaintiff in performance of the agreement the sum of $4,290, no part of which has been paid except the sum of $910, leaving a balance due and owing to the plaintiff of $3,380, together with interest from the

twelfth day of July, 1930, and to obtain decree foreclosing the plaintiff's lien on the property. By answer, the defendant admits that between March 23 and July 11, 1930, the plaintiff furnished labor and materials as alleged, but denies that they were furnished for a period longer than fourteen days at the defendant's special instance and request; that an oil and gas lease was made and entered into between the United States of America and William Seabrook, as lessee, on or about June 25, 1924, covering the premises described in the plaintiff's complaint, which was subsequently assigned on or about May 17, 1924, to W. H. Hewson, who in turn assigned the same to the defendant; and that the oil and gas lease and the interest of the defendant therein and to the premises covered thereby is not subject to a lien under the laws of the state of Montana, being a contract entered into with the United States of America.

By cross-complaint, designated by the defendant as "a counterclaim," the defendant alleges substantially that on or about March 23, 1930, the defendant was the owner and in the possession of an oil and gas leasehold covering the premises described in the plaintiff's complaint, and was the owner of an oil-well theretofore drilled on the premises known as "Seabrook No. 1," which had been drilled to a depth of approximately 1,596 feet and cased to a depth of 1,466 feet, which well was then capable of producing oil in commercial quantities, which was of the reasonable value of $5,000; that on or about the 23d of March, 1930, the defendant employed the plaintiff to clean out such well and to drill the same deeper, and cause it to be prepared so that the oil-bearing sands might be shot with nitroglycerine, and put in condition to produce oil, which work the plaintiff agreed to do in a good and workmanlike manner in conformity with usage in the Kevin Sunburst field, and to exercise a reasonable degree of skill in the performance of the work, the plaintiff agreeing to provide suitable and sufficient tools, equipment and appliances for the performance of the work; in consideration therefor the defendant agreed to pay the plaintiff the sum of $65 per day for each

day the plaintiff should be engaged in the actual work of cleaning out the well; that pursuant to the agreement the plaintiff moved tools and appliances on the premises on or about the twenty-third day of March, 1930, and proceeded to the performance of his contract; but that the plaintiff carelessly and negligently failed to exercise a reasonable degree of skill in preparation of the well for a shot of nitroglycerine; that he negligently and carelessly failed to reduce the fluid in the well to a point below the bottom of the casing and carelessly and negligently failed to cause the shot to be placed at the proper depth to shoot the oil-bearing sands without unnecessary injury to the casing, and that by reason thereof the casing in the well was injured and damaged by the nitroglycerine shot exploded therein, and that thereafter, while the plaintiff was engaged in repairing the damaged condition of the casing caused by his negligence he carelessly and negligently caused a string of tools used in working in the well to be dropped from the surface to a depth of approximately 1,465 feet and to become fastened and stuck at or near the bottom of the well in such manner that the well could not thereafter be cleaned out nor put in condition to produce oil, by reason of which the well was destroyed and rendered valueless, to defendant's damage in the sum of $5,000; that thereafter, during all of the remainder of the time subsequent to April 17, 1930, while the plaintiff remained on the property, he spent his entire time and efforts in an attempt to remove the tools which he had dropped in the well, and was not engaged in the performance of his contract to clean out the well; that he attempted for a long time to recover the tools without success and they still remain therein; that on or about July 9, 1930, the plaintiff ceased operations upon the premises and attempt to recover his tools lost in the well, removed his equipment, and wholly failed to carry out the terms of his contract; that, through the plaintiff's negligence and carelessness and failure to exercise a reasonable degree of skill in the performance of the work on the well, the defendant has suf-

fered damages in the sum of $5,000, for which amount judgment is prayed.

The plaintiff's reply is in effect a general denial of the affirmative allegations of the defendant's answer and cross-complaint.

The court found among other things: That prior to the twenty-third day of March, 1930, the defendant had caused to be drilled upon the land an oil and gas well known as Seabrook No. 1, "and that between the 23d day of March, 1930, and the 11th day of July, 1930, both dates inclusive, and continuously between said dates," the plaintiff furnished equipment and labor in cleaning out, drilling deeper, and swadging pipe in the well, at the special instance and request of the defendant; that "the defendant promised and agreed to pay the plaintiff for the furnishing of said machinery, materials, tools, fuel and the doing of said labor in cleaning out, drilling deeper and swadging pipe in said oil well, the sum of Sixty-five ($65.00) Dollars per day for the time engaged therein by the plaintiff; that by virtue thereof the defendant became indebted to the plaintiff in the sum of Thirty Eight Hundred Two & 50/100 ($3,802.50) Dollars no part of which has been paid, save and except the sum of Nine Hundred and Ten ($910.00) Dollars, and that there is now due, owing and unpaid from the defendant to the plaintiff thereon the sum of Twenty-Eight Hundred Ninety Two & 50/100 ($2,892.50) Dollars, together with interest at the rate of 8% per annum from the 11th day of July, 1930, amounting to the sum of One Hundred Ninety Four & 10/100 ($194.10) Dollars, making a total of principal and interest in the sum of Thirty Hundred Eighty Six & 10/100 ($3,086.10) Dollars. That plaintiff has been obliged to employ an attorney for the preparation of said lien and paid for the preparation and filing thereof the sum of Five & 50/100 ($5.50) and the sum is a reasonable charge therefor; and plaintiff also has been obliged to employ attorneys to prosecute this action, and that the plaintiff is entitled to a reasonable attorney's fee herein there-

for and that the sum of Two Hundred ($200.00) Dollars is hereby fixed and allowed by the Court as and for a reasonable attorney's fee for such services herein.''

It appears that the plaintiff, after moving his equipment on to the premises on March 23, 1930, proceeded to bail out the Seabrook well No. 1, which had been theretofore drilled to a depth of about 1,573 feet, in order to place therein a shot of nitroglycerine. On March 25, 1930, a ten-quart shot of nitroglycerine was exploded in the well, after which the plaintiff continued work on the well in cleaning it out until April 12, on which date a second shot of twenty quarts of nitroglycerine was placed in the well and exploded.

The defendant's manager was at the well with the plaintiff before the last charge of nitroglycerine was placed in the well, and agreed that the depth as indicated by the bailor was sufficient below the casing to permit the explosion of the shot without damage to the casing. They miscalculated by over ten feet, as a result of which two lengths of casing at the bottom of the well were badly damaged by the discharge of the nitroglycerine. Work was by the plaintiff thereafter continued at the well in an endeavor to recover the lost tools, and on June 11 all the tools were recovered save the bit which the plaintiff was unable to recover, and in consequence he ceased operations on the premises on July 11, 1930, and moved away therefrom, leaving the bit still in the well at a depth of about 1,505 feet.

After such last explosion it was determined by the plaintiff and the defendant's manager that about ten feet of pipe in the bottom of the well would have to be swadged out. In order to accomplish this, the plaintiff started swadging on April 14 and continued until April 17, at which time he dropped and lost the tools in the hole. The plaintiff, on the following day, stated to the defendant's manager that it was his (the plaintiff's) fault the tools were lost, and "that the fixing job would be on him." Mr. Hewson and Mr. Seabrook, representing the defendant, continually watched the plaintiff in his operations at the well, and it was not until July 10, 1930, that the plain-

tiff was advised by either of them that they did not wish to have the work proceed further. On that date Mr. Hewson stated to the plaintiff that they would not spend any more money on that hole and the plaintiff replied that neither would he, so the next day work was suspended.

We have carefully reviewed the record and considered the several assignments of error made by the defendant as reason for reversal of the judgment, and in our opinion but one question is presented necessary to be considered in disposition of the appeal, viz.: Did the court err in making and entering judgment decreeing that all of the right, title and interest of the defendant in the leasehold involved and the buildings and appurtenances thereon and belonging thereto, and all of the right, title and interest of the defendant in and to the oil and gas-well for which the plaintiff furnished machinery, tools and labor known as Seabrook No. 1, and all of the right, title and interest of the defendant in and to all other wells, fixtures and appliances belonging to the defendant used in operating for oil and gas development on the leasehold, are subject to the lien asserted by the plaintiff, and, in the event that on foreclosure sale the amount received is not sufficient to liquidate the judgment, that the defendant shall be held responsible to pay the amount of the deficiency.

The statute provides: ''Any person, corporation, or co-partnership, who shall under contract, expressed or implied, with the owner of any leasehold for oil and gas purposes, or the owner of any gas pipe or oil pipe line, or with the trustee or agent of such owner, who shall perform labor or furnish material, machinery, and oil well supplies used in the digging, drilling, torpedoing, completing, operating, or repairing of any oil or gas well, or who shall furnish any oil well supplies, or perform any labor in constructing or putting together any of the machinery used in drilling, torpedoing, operating, completing or repairing any gas well, shall have a lien upon all of the right, title and interest of such owner in and to the whole of such leasehold or oil pipe line or gas pipe line, or lease for oil and gas purposes, the building, and appurtenances, and upon

the material and supplies so furnished, and upon all of the right, title and interest of such owner in and to said oil and gas well for which they were furnished, and upon all of the right, title and interest of such owner in and to all other oil wells, fixtures, and appliances used in the operating for oil and gas purposes upon the leasehold for which said material and supplies were furnished and labor performed." (Sec. 8375, Rev. Codes 1921, as amended by Chap. 152, Sess. Laws 1923.) And, further: "The liens herein created shall be enforced in the same manner, and the notice of same shall be given in the same manner, and the materialman's statement, or the lien of any laborer herein mentioned, shall be filed in the same manner as now provided by the laws of Montana for materialmen's and mechanic's liens, except that the time within which such liens must be filed shall be six months instead of ninety days; and the method of procedure provided by the laws of the State of Montana for enforcing of materialmen's and mechanic's liens shall govern the enforcement thereof." (Sec. 8377, Rev. Codes 1921, as amended by Chap. 152, Sess. Laws 1923.)

The defendant contends that the court was in error in adjudging the plaintiff entitled to a lien on the property because of the fact that the lease involved is one issued covering property belonging to the United States, wherein express provision is made against its assignment by the lessee in the following language, to-wit: "The lessee hereby agrees * * * not to assign this lease or any interest therein, nor sublet any portion of the leased premises, except with the consent in writing of the Secretary of the Interior first had and obtained." In this connection it is argued that a foreclosure of the lien involved is ineffectual and invalid by reason of the fact that the Secretary of the Interior is not required to recognize any interest in the property resulting from a sale of it on foreclosure. There is no merit in this contention.

The statute provides that "all goods, chattels, moneys, and other property, both real and personal, or any interest therein of the judgment debtor, not exempt by law * * * are lia-

ble to execution." (Sec. 9424, Rev. Codes 1921.) And, also, that a person performing such work as is herein described for another "shall have a lien upon all of the right, title and interest of such owner in and to the whole of such leasehold or oil pipe line or gas pipe line, or lease for oil and gas purposes" (sec. 8375, Rev. Codes 1921, as amended by Chap. 152, Sess. Laws 1923), upon complying with the requirements of the law.

By the great weight of authority, covenants in leases against ██ ██ assignments or subletting are held to have application only to the voluntary act of the tenant. The lease does not become forfeited by a transfer made by operation of law. A holding otherwise would permit the creation of valuable property rights in such lessees to be held by them in defiance of the demands of creditors. (*Medinah Temple Co.* v. *Currey, Assignee,* 58 Ill. App. 433; *Smith* v. *Putnam,* 3 Pick. (Mass.) 221; *Riggs* v. *Pursell,* 66 N. Y. 193; *Jackson* v. *Silvernail,* 15 Johns. (N. Y.) 278; *In re Bush,* (D. C.) 126 Fed. 878; *Farnum* v. *Hefner,* 79 Cal. 575, 12 Am. St. Rep. 174, 21 Pac. 955; *Powell* v. *Nichols,* 26 Okl. 734, 29 L. R. A. (n. s.) 886, 110 Pac. 762; 16 R. C. L., p. 834.)

Under the Act of Congress authorizing the lease of lands for oil and gas exploration and development (41 Stat. 448, sec. 27 [30 U. S. C. A., sec. 184]) it is provided that an interest asserted in such lands in violation of the statute is to be forfeited by proceedings instituted by the Attorney General, "except that any ownership or interest forbidden in this subchapter which may be acquired by descent, will, judgment, or decree may be held for two years and not longer after its acquisition." It is unquestionably a property right, which in some instances may be very valuable; and to permit the holders of such leases to claim such property as exempt from the just demands of creditors was never intended. The United States government would not lend itself to such fraud, and, from a simple reading of the Act regulating the execution of such leases, it is manifest that it was within the contemplation of the law that transfers of such leases could be effected by "judgment or decree" with-

out the necessity of first obtaining the consent of the Secretary of the Interior.

There is evidence supporting the allegations of the plaintiff's complaint and the findings made by the court as to the amount found to be due the plaintiff; the evidence would warrant the award of a considerably larger sum. No findings on the defendant's cross-complaint were made, but impliedly the court held it to be without substance. It is to be observed that plaintiff demanded in his complaint as a balance due from the defendant the sum of $3,380, after allowing a deduction of $910 paid, although alleging work performed pursuant to the contract between March 23 and July 11, 1930, a period of 111 days. The court found to be due the plaintiff the sum of $2,892.50, with interest thereon from July 11, 1930, but it is impossible for us to ascertain the basis for computation of this amount. If the plaintiff worked in the performance of the contract, as the court found, "continuously" between March 23, and July 11, 1930, both dates inclusive, it would figure $7,215 on the contract price of $65 per day. It is shown by the evidence that the plaintiff performed sixty days' work in the fulfillment of his contract, which would total $3,900, and after allowing credit for the money paid leave a balance due the plaintiff of $2,990.

The testimony is to the effect that, when the contract was entered into, the plaintiff estimated that it would not take more than a week to perform the work, and that he was by the defendant paid for two weeks' work, viz., $910, or $65 per day, the agreed price for a total of fourteen days, for which payment the plaintiff in his complaint allows a credit on account. The plaintiff says that he made no charge for the time he was engaged in an attempt to recover the tools which he lost in the well; however he is shown by the evidence to have been engaged in that work from April 18 to July 11, 1930, a total of eighty-four days; so that prior to such mishap he had worked for a total of but twenty-five days. Twenty-five days at $65 per day figures a total of only $1,625. For twenty-two days the plaintiff states that he was engaged in fishing for the lost

tools. The tools were recovered, other than the bit, on June 11, and thereafter the plaintiff devoted his time and energy in an endeavor to remove the bit. Figuring from March 23 to June 11, the date the tools were lifted from the well, would be eighty days, which at $65 per day would amount to a total of $5,200, and deducting therefrom the sum paid on account, would leave a balance of $4,290.

Since we cannot find the basis for the court's findings as to the amount due the plaintiff, and it is an amount less than claimed by the plaintiff, and the plaintiff makes no complaint as to the amount found by the court to be due him, we see no reason to disturb the judgment. As the plaintiff established a lien on the defendant's property, it was proper on foreclosure for the court to provide for a deficiency judgment in the event that, upon a sale of the property, it did not bring enough to pay the amount found to be due the plaintiff, together with interest, costs, and attorney's fees. When the remittitur shall be filed, should the plaintiff claim his costs, the district court will fix and assess a reasonable attorney's fee as a part of the plaintiff's costs on appeal.

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES FORD, ANGSTMAN and MATTHEWS concur.

Rehearing denied June 10, 1932.