No. 20,072.

MARIE BEAR, SPECIAL ADMINISTRATRIX OF THE ESTATE OF
TONY BEAR, DECEASED, *v.* VIRGINIA BEAR.
(377 P. [2d] 538)

Decided December 10, 1962.

Messrs. SHERMAN and GLASTON, for plaintiff in error.

Messrs. ZARLENGO, ZARLENGO & SEAVY, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE SUTTON.

THE judgment here for review is concerned with the ownership of certain coal mining property held in partnership by the defendant in error, Virginia Bear, with the deceased husband of the plaintiff in error, Marie Bear. We will refer to the parties by name.

The record discloses that in 1914 the deceased, Tony Bear, was married to the defendant, Virginia Bear. They homesteaded certain land in which the federal government reserved coal rights. In 1923 Tony deeded his interest to Virginia; Tony then obtained a government coal lease in his name alone to the same land. In 1944 the two of them formed a partnership for the purpose of operating a mine on the land. The partnership agreement is set out in full in the record but we deem it necessary to refer to only two paragraphs. Paragraph No. 4 provided:

"That Virginia Bear hereby agrees that she will permit the use of the hereinabove described property to be used in the operation of the Tony Bear Mine so long as the said Tony Bear shall desire to operate the same in connection with the coal mine, and that she will execute and sign any and all papers which may be necessary to keep the said mine in operation on a joint and equal basis; and that the properties herein involved including all mine properties shall belong to the said Parties equally, except that there shall be no attempt to convey the Government lease embracing coal lands, nor shall it be affected, except insofar as coal removed therefrom is concerned, it being understood between the Parties hereto that Tony Bear, under the agreements in this said Partnership, shall permit Virginia Bear to enjoy a one-half ($\frac{1}{2}$) interest in the proceeds from coal mined from said lease without conveyance of any portion of the said lease."

Paragraph No. 10 provided:

"That in the event of the death of either one of the Parties hereto, the surviving Partner shall continue with the operation of said business as his sole property; and that the survivor of either of the Parties hereto shall, upon the death of the other Party, become the absolute owner outright of all properties, machinery, equipment, bank accounts, buildings, or any other things whatsoever belonging to or pertaining to the hereinabove described real estate, mine property or attachments thereunto appertaining."

Tony and Virginia jointly operated the coal mine under this agreement until Tony's death in 1959. It appears, however, that on September 16, 1948, Tony obtained a divorce from Virginia and thereafter married Marie; and that on August 16, 1948, Virginia created, with their three sons, a joint tenancy estate in the land used by the partnership. Marie was the sole beneficiary named by Tony in his Last Will and Testament and was

made Special Administratrix of his estate. She brought this action on behalf of the estate to determine when the partnership was dissolved, for an accounting and for general relief.

Marie claimed that the partnership had been dissolved by Virginia putting her real property title in joint tenancy with persons other than Tony and that in any event Tony's death dissolved the partnership and thereby entitled Marie to his partnership interests. Defendant pleaded the partnership survivorship clause and that the mining lease was part of the partnership property. The case came to trial and following presentation of the plaintiff's evidence the defendant moved to dismiss and the motion was granted. This writ of error is directed to the granting of that motion.

The validity of Marie's grounds for reversal depends upon the answers to the following questions: (1) Did Tony's death not only dissolve the partnership but also abrogate the partnership clause (paragraph 10) granting the survivor full rights to all partnership property; (2) what was the effect of the joint tenancy deed on the partnership agreement; (3) can the government mining lease validly pass to a surviving partner? We turn our attention to the problems as stated.

As early as 1893 the Federal Circuit Court held in *McKinnon v. McKinnon,* 56 Fed. 409, that the form of partnership survivorship clause here in issue is a valid non-testamentary provision. The court pointed out that such a disposition of property is neither a deed nor a will but an executory agreement "* * * which determines the rights of the parties inter se, and provides what disposition shall be made of the partnership property on the happening of a certain event. In the state of Missouri, where these articles were signed, and where both partners at the time resided and carried on business, it is as well settled, as it is in any state of this Union, that an agreement by a person, upon a valuable

consideration, to give to another the whole or a part of his property at the promissor's death, will be specifically enforced in equity, both as to real and personal property, if the consideration is duly rendered by the promisee. (Numerous authorities cited.) And the same doctrine was approved by this court, in view of these authorities and others of a similar character, in Jaffee v. Jacobson, 4 U. S. App. 4, 1 C.C.A. 11, 48 Fed. Rep. 21." Colorado followed *McKinnon* in *Walker v. Drogmund,* 101 Colo. 521, 524, 74 P. (2d) 1235 (1937). Also see *Michaels v. Donato,* 4 N.J. Super, 570, 67 A (2d) 911, 913 (1949).

■ Courts have consistently held that, as in the case of any survivorship agreement, such provisions must be examined closely to be sure that there was a full and fair disclosure between all parties. See for example, *Alexander v. Sims,* 220 Ark. 643, 249 S.W. (2d) 832 (1952). Here there is no issue as to disclosure between the partners at the time the partnership was created. Thus we conclude that this clause is valid and is sufficient to pass title to Virginia unless other factors prevent it.

Marie, however, contends that the survivorship agreement was waived or otherwise abrogated when the defendant created the joint tenancy agreement. Her reasoning is that had Virginia died first, then Tony would not have been able to claim the land itself since it would have been disposed of by the joint tenancy deed. The answer to this problem rests in determining what interest was created by paragraph four of the partnership agreement, which stated in pertinent part:

"Virginia Bear hereby agreed that she will permit the *use* of the herinabove described property to be *used* in the operation of the Tony Bear Mine so long as the said Tony Bear shall desire to operate the same in connection with the coal mine, * * *; and that *the properties herein involved including all mine properties shall be-*

*long to the said parties equally* except that there shall be no attempt to convey the Government lease * * *." (Emphasis supplied.)

■ A careful reading of the above provision clearly discloses the twofold purpose of the parties. Virginia agreed that the real property, which she owned, could be used (i.e. the surface) for the mining operation; following this consent to the use of the land, and separated by a semicolon is the provision that the parties were to own the "properties herein" equally, except for a present assignment of the government lease, which the lease itself prohibited without lessor's consent. The latter provision could only refer to the mining partnership assets, including the right to use the surface for such operations. It did not include Virginia's fee ownership of the land for her grant had conferred only the right to "use" the land in the partnership mining operation. The right to "use" the surface was an easement appurtenant and was part of the "properties herein." The mere fact that the partnership business was partly carried on upon the surface land owned by Virginia did not ipso facto make it partnership property. See 68 C.J.S., page 511, *Partnership,* Sec. 72 (e).

■ Viewing the wording as creating an easement, as we must, then Virginia's creation of the joint tenancy had no effect on Tony's partnership interest. If Virginia had died first the land would still have been subject to the easement. The new grantees (their sons) clearly had actual knowledge of the easement due to the partnership's possession of the surface, and took their interest subject to the partnership's rights in possession. See 17A *Am. Jur.* page 757, *Easements,* Sec. 152. Thus Tony had the same interest following the creation of Virginia's joint tenancy as he had before and there was no effect on the partnership agreement.

We next come to the question of the mining lease and its present ownership. We must first refer in this regard

to that portion of paragraph four of the plaintiff's agreement which reads:

"* * * and that the properties herein involved including all mine properties shall belong to the said parties equally, except that there shall be no attempt to convey the Government lease embracing coal lands, nor shall it be affected, except insofar as coal removal therefrom is concerned, it being understood between the Parties hereto that Tony Bear, under the agreement in this said Partnership, shall permit Virginia Bear to enjoy a one-half (½) interest in the proceeds from coal mined from said lease without conveyance of any portion of the said lease."

The mining lease provision applicable to this clause provides:

"2 (j) That the lessee shall not assign his lease or any interest therein, whether by direct assignment, operating agreement, working or royalty interest, or otherwise, nor sublet any portion of the leased premises, except with the consent in writing of the Secretary of the Interior * * *."

It was because of the prohibition against assignment that the agreement made clear that there was to be no assignment thereof, nevertheless the lease was considered by both parties, even without an assignment, to be part of the partnership property for survivorship purposes. The applicable rule as to what will constitute partnership property is to look to the intention of the parties. This can include their words, actions, and business practices. Further the lack of an assignment is not controlling.

We have only recently held in a mining partnership case [*Thompson v. McCormick*, 149 Colo. 465, 370 P. (2d) 442 (1962)] that it was not illegal for a partnership to operate under and divide the profits procured from a government mineral lease that contains an express prohibition against assignment. In *Thompson*, however, the

lessee was also the sole operator but that difference would not change its application here where no assignment has occurred except by operation of law upon the death of Tony.

The fact that this lease also provided that it inured to the benefit of the lessee's "heirs, executors, administrators, successors, or assigns of the respective parties hereto" cannot aid Marie. In fact, this provision (lease section 8) by the use of the term "successors" indicates that a transfer by operation of law is to be recognized. The great weight of authority is that a governmental mineral lease is not forfeited by a transfer made by operation of law. *Hockman v. Sunhew Petroleum Corp.,* 92 Mont. 174, 11 P. (2d) 778, 781 (1932). In addition, the lease in section 2 (j) provides that it can be assigned only with the consent of the lessor and describes how this is to be done. This provision is for the benefit of the lessor and not Marie so she cannot claim thereunder. See *Thompson* supra; *Routt County Co. v. Stutheit,* 101 Colo. 254, 257, 72 P. (2d) 692 (1937); and 58 C.J.S. 208, *Mines and Minerals,* Sec. 130. Marie's position, however, is not that the government lease cannot pass to her as an heir or beneficiary, but that Virginia cannot take it under the partnership agreement. This is erroneous. If she may inherit it, then by the same reasoning Virginia should be able to succeed by operation of law to the title under the partnership agreement on Tony's death.

We hold that the lease was not abrogated by the partnership agreement, and the ownership passed to Virginia by virtue thereof on Tony's death.

To reiterate, we have here a partnership which continued until Tony's death in spite of his divorce from Virginia and in spite of Virginia's creation of the joint tenancy in her land. The mining lease was validly recognized as part of the partnership assets and was subject, along with the other assets, to disposition under the

196

partnership agreement, its survivorship article granting the assets to Virginia as the surviving partner. Tony's death dissolved the partnership but could not affect his prior continuing agreement, under which Virginia was to succeed to all the partnership assets.

The judgment is affirmed.

MR. JUSTICE HALL and MR. JUSTICE PRINGLE concur.